DRAKE v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 257800. Submitted January 4, 2006, at Grand Rapids. Decided February 23, 2006, at 9:00 a.m. Leave to appeal sought.

Michael E. Drake brought an action in the Hillsdale Circuit Court against Citizens Insurance Company of America, seeking first-party no-fault personal protection insurance benefits after losing one finger and part of another when his hand was caught in the auger system of a parked truck delivering animal feed. The court, Michael R. Smith, J., granted partial summary disposition for the plaintiff on the issue of liability. The defendant appealed, arguing that the plaintiff's injury did not arise out of the use of a motor vehicle as a motor vehicle.

The Court of Appeals *held*:

The circuit court did not err in granting plaintiff's motion for partial summary disposition on the issue of liability. Under MCL 500.3106(1) of the no-fault act, accidental bodily injury compensable with personal protection insurance benefits does not arise with respect to a parked vehicle unless (a) the vehicle was parked in such a way as to cause unreasonable risk of the bodily injury that occurred, (b) except for certain injuries compensable with workers' compensation benefits, the injury was the direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or property was being lifted onto or lowered from the vehicle in the loading or unloading process, or (c) except for certain injuries compensable with workers' compensation benefits, the injury was sustained by a person while occupying, entering, or alighting from the vehicle. In this case, the plaintiff's injuries were a direct result of physical contact with equipment permanently mounted on the vehicle, while the vehicle was being operated or used, MCL 500.3106(1)(b).

Affirmed.

ZAHRA, P. J., dissenting, stated that MCL 500.3105 and 500.3106 must both be satisfied in this case to allow personal protection insurance benefits for the plaintiff's injuries, and they were not. The plaintiff's injuries did not arise from the use of a motor vehicle as a motor vehicle. MCL 500.3105 presents the threshold question

whether the injury arises from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. To find coverage for injuries arising out of any use other than transportation, such as using an auger system to power grain through a hydraulically extended boom to the top of a silo, is contrary to the language of the statute. The circuit court judgment should be reversed and the case remanded for entry of judgment in favor of the defendant because the plaintiff's injuries clearly did not arise out of the use of a motor vehicle as a motor vehicle as required by MCL 500.3105.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — PARKED VEHICLES.

Personal protection insurance benefits under the no-fault act for injury arising out of the ownership, operation, or use of a parked vehicle are available where (a) the vehicle was parked in such a way as to cause unreasonable risk of the injury that occurred, (b) except for certain injuries compensable with workers' compensation benefits, the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property was being lifted onto or lowered from the vehicle in the loading or unloading process, or (c) except for certain injuries compensable with workers' compensation benefits, the injury was sustained by the person while occupying, entering, or alighting from the vehicle (MCL 500.3106[1]).

*Hooper, Hathaway, Price, Beuche & Wallace* (by *Mark R. Daane*) for the plaintiff.

*Anselmi & Mierzejewski, P.C.* (by *Joseph S. Mierzejewski*), for the defendant.

Before: ZAHRA, P.J., and MURPHY and NEFF, JJ.

NEFF, J. In this first-party no-fault insurance action, defendant appeals as of right the trial court's order granting plaintiff's motion for summary disposition regarding liability. We affirm.

I. FACTS

Plaintiff filed this action for no-fault benefits under his automobile insurance coverage with defendant in-

surer after he was injured in an accident involving a grain delivery truck. On May 31, 2002, Thomas Lee Passmore, a delivery truck driver for Litchfield Grain Company, arrived to deliver animal feed at a farm where plaintiff was employed. Passmore backed the truck up to a silo and activated the truck's auger system to unload the feed. Passmore realized that the feed was not dropping onto the auger system, which had apparently become clogged. Plaintiff was assisting Passmore in unclogging the truck's auger system when he was injured. As plaintiff reached through an inspection door on the truck to clean the animal feed from the augers, Passmore activated the augers without warning, apparently unintentionally. Plaintiff lost his right index finger and a portion of his right middle finger.

The trial court granted plaintiff's motion for summary disposition on the issue of liability. The court found that plaintiff's injuries were covered under the no-fault act, MCL 500.3101 *et seq.*, pursuant to the parked-vehicle exceptions, MCL 500.3106(1). Defendant contends that the trial court erred in granting summary disposition to plaintiff.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of summary disposition under MCR 2.116(C)(10). *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id.* at 163. The court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in a light most favorable to the party opposing the motion. *Id.* at 164. If the evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *Id.*

### III. ANALYSIS

Defendant argues that plaintiff's injury is not covered by the no-fault act because it did not arise out of the use of a motor vehicle "as a motor vehicle." MCL 500.3105(1). We disagree. The starting point for our analysis under the no-fault act is MCL 500.3105(1). *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 33; 651 NW2d 188 (2002). Section 3105(1) provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle *as a motor vehicle*, subject to the provisions of this chapter. [Emphasis added.]

Under § 3105(1), the analysis for determining whether no-fault benefits are available involves two broad steps. *Rice, supra* at 33. First, it is necessary to determine "whether the injury at issue is covered," i.e., whether it is "accidental," "bodily," and "aris[es] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." *Id.* Second, it is necessary to determine whether the injury is excluded under other provisions in the no-fault act and whether an exception to an exclusion would save the claim. *Id.*

In the present case it is undisputed that the injury sustained by plaintiff was both accidental and bodily, consisting of the accidental severance of the right index finger and a substantial portion of the right middle finger. Thus, it is necessary to determine whether plaintiff's injuries arose out of "the ownership, operation, maintenance or use of a motor vehicle *as a motor vehicle* . . . ." *Id.* (emphasis added). If so, we must then determine whether plaintiff's injury is excluded under other applicable provisions of the no-fault act. *Id.*

"[W]hether an injury arises out of the use of a motor vehicle 'as a motor vehicle' under § 3105 turns on whether the injury is closely related to the transportational function of motor vehicles." *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 225-226; 580 NW2d 424 (1998). While a vehicle need not be in motion at the time of an injury in order for the injury to "arise out of the use of a motor vehicle as a motor vehicle," *McKenzie, supra* at 219 n 6, the phrase "as a motor vehicle" does require a general determination of whether the vehicle in question was being used, maintained, or operated for transportational purposes, *id*. at 219.

Contrary to defendant's argument, we disagree that plaintiff's injury did not arise out of the ownership, operation, maintenance, or use of a motor vehicle *as a motor vehicle* under the analysis set forth in *McKenzie*. The circumstances in this case are unlike those circumstances identified in *McKenzie* as rare instances "when a motor vehicle is used for other purposes, e.g., as a housing facility of sorts, as an advertising display (such as at a car dealership), as a foundation for construction equipment, as a mobile public library, or perhaps even when a car is on display in a museum." *Id*. at 219. The vehicle involved is a delivery truck, and it was being used as such when the injury occurred. Accordingly, plaintiff's injury is closely related to the motor vehicle's *transportational function*, and therefore arose out of the operation, ownership, maintenance, or use of a motor vehicle "as a motor vehicle" pursuant to *McKenzie, supra* at 220.

With regard to the second step in the analysis under § 3105(1), *Rice, supra* at 33, injuries arising out of contact with parked vehicles are generally not covered by the no-fault act. MCL 500.3106(1). However, an injury related to a parked vehicle is compensable if one of the following exceptions applies:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle. [MCL 500.3106(1).]

Plaintiff contends that § 3106(1)(b) applies because his injuries were "a direct result of physical contact with equipment permanently mounted on the [grain delivery] vehicle, while the equipment was being operated or used . . . ." MCL 500.3106(1)(b). We agree.

It is uncontested that the grain delivery truck's auger system, used for unloading, was "permanently mounted" on the grain delivery truck. It is further uncontested, as shown by the documentary evidence submitted to the trial court, that Passmore activated the vertical auger momentarily while plaintiff's right hand was reaching through the inspection door on the rear of the delivery vehicle. Finally, neither party disputes the fact that plaintiff's injuries were caused by physical contact with the grain truck's augers when they were activated. Because the material facts were not in dispute regarding whether plaintiff's injuries were "a direct result of physical contact with equipment permanently mounted on the [grain delivery] vehicle, while the equipment was being operated or used," the trial court properly found that plaintiff's claim for no-fault benefits fell within the second parked-vehicle exception of § 3106(1)(b).

Defendant argues that this case is factually analogous to *Bialochowski v Cross Concrete Pumping Co*, 428

Mich 219; 407 NW2d 355 (1987), which was expressly
overruled in *McKenzie, supra* at 223-224. In *Bialo-
chowski,* our Supreme Court found that an injury
sustained while a cement truck was pumping concrete
had arisen "out of the use of a motor vehicle as a motor
vehicle."[1] *Bialochowski, supra* at 228-229. However, the
*McKenzie* Court criticized the analysis in *Bialochowski,*
noting that the cement truck was not being used for a
transportational function at the time of the injury.
*McKenzie, supra* at 224-226.

Defendant suggests that because the grain delivery
truck in the case at bar was similarly unloading cargo,
plaintiff's injury must not have arisen out of the use of the
grain truck "as a motor vehicle" under the reasoning of
*McKenzie.* However, as discussed above, the circum-
stances in this case are not akin to those rare instances
identified in *McKenzie* in which a motor vehicle is
not being used as a motor vehicle. Further, defendant's
argument disregards a fundamental difference between
*Bialochowski* and the case at bar. Before the *Bialo-
chowski* cement truck could begin unloading concrete, the
vehicle had to be stabilized, effectively transforming the
cement truck from a motor vehicle into a platform for
construction equipment. Therefore, at the time of the
injury in *Bialochowski,* the cement truck was no longer
functioning "as a motor vehicle," but rather as a founda-
tion for construction equipment. In contrast, the grain
truck in the case at bar never lost its essential character as
a motor vehicle. At all times it remained drivable, and no
transformation or mechanical alteration was necessary

---

[1] *Bialochowski* involved a motorized, four-wheeled, cement truck, with
a permanently attached thirty- to thirty-five-foot boom used to pump
concrete up to elevated levels. *Id.* at 222-223. The plaintiff was injured
when the concrete pump exploded, causing the boom to collapse on the
plaintiff. *Id.* at 223. At the time of the accident, the truck was parked and
stabilized. *Id.*

before it could begin unloading grain. The facts of this case are therefore distinguishable from those present in *Bialochowski.*

### IV. *McKENZIE* INTERPRETATION OF THE PARKED-VEHICLE EXCEPTIONS

While we recognize that *McKenzie* controls the analysis of no-fault coverage in this case, we conclude that the *McKenzie* analysis is at odds with the no-fault statutory scheme.

MCL 500.3105(1) provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

MCL 500.3106, which addresses parked motor vehicles and the recovery of personal injury protection (PIP) *benefits*, provides in part:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:
>
> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.
>
> (b) Except as provided in subsection (2),[2] the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.
>
> (c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

---

[2] Section 3106(2) is not applicable here.

Plaintiff's injuries fall squarely into § 3106(1)(b). The unintentional injuries were caused by physical contact with the grain truck's augers when they were activated. As such, plaintiff's injuries were "a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used[.]" MCL 500.3106(1)(b).

In determining the parameters of no-fault benefits, we must examine the express provisions of the no-fault act. Reading the plain language of MCL 500.3106, a cogent argument can be made that if any of the three parked-vehicle exceptions[3] applies in a given case, the injury, by statutory mandate, *does arise* out of the ownership, operation, maintenance, or use of the parked vehicle as a motor vehicle; therefore, PIP benefits would be recoverable.[4] If this were the approach intended by the Legislature, there could be no legitimate dispute that plaintiff is entitled to PIP benefits.

The primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The words contained in a statute provide the most reliable evidence of the Legislature's intent. *Id.* at 549. In ascertaining legislative intent, this Court gives effect to every word, phrase, and clause in the statute. *Id.* We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. *Id.* This Court must avoid a construction that would render

---

[3] Subsections a, b, and c of § 3106(1).

[4] Stating that "[a]ccidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur," MCL 500.3106(1), is arguably comparable to stating that "accidental bodily injury does arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle when any of the following occur."

any part of a statute surplusage or nugatory. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004). " 'The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.' " *Shinholster, supra* at 549 (citation omitted). If the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. *Id.* "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

In keeping with these rules of statutory interpretation, the historical view of the no-fault provisions under § 3105 and § 3106 is that § 3106 establishes an analytical framework for the parked-vehicle exceptions that is independent of § 3105. Only recently has the Court embraced a conceptual scheme that treats § 3105 as a threshold requirement for consideration of the parked-vehicle exceptions, which now has come to full fruition in the *McKenzie* "transportational function" test. *McKenzie, supra* at 225-226.

In *Winter v Automobile Club of Michigan*, 433 Mich 446, 448; 446 NW2d 132 (1989), the Michigan Supreme Court, in providing an overview of the case and its holding, stated:

> In this insurance case, the carrier appeals from a determination that the no-fault act covers an accidental injury to plaintiff which occurred when a slab of sidewalk, raised by a tow truck, slipped off its hook and fell on plaintiff's hand. Because the vehicle was "parked" within the meaning of § 3106(1) at the time of the accident, and none of the § 3106(1) exceptions is applicable, plaintiff is not entitled to no-fault benefits, and we therefore reverse.

In *Winter*, as in this case, the defendant argued that the tow truck was not being used "as a motor vehicle" within the meaning of MCL 500.3105(1), but rather it was being used as a stationary crane. *Id.* at 451. Our Supreme Court, sharpening the focus on the proper analysis, stated:

> In limiting no-fault benefits to injuries "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," the Legislature realized that it would be inherently difficult to determine when a *parked* vehicle is in use "as a motor vehicle." *Accordingly, the Legislature specifically described in subsections (a)-(c) of § 3106(1) the limited circumstances when a parked vehicle is being used "as a motor vehicle."* Thus it is apparent that if a vehicle is "parked" coverage otherwise available under § 3105(1) is qualified by the provisions of § 3106(1). In the instant case, because the tow truck was parked, coverage is excluded by § 3106(1) unless one of its exceptions is applicable. [*Winter, supra* at 457-458 (emphasis added in the second sentence).]

The Court concluded that none of the exceptions set forth in MCL 500.3106(1) applied to the facts of the case; therefore, the tow truck was not being "used as a motor vehicle" within the meaning of § 3105(1), and the plaintiff was not entitled to PIP benefits. *Winter, supra* at 460-461.[5] *Winter* suggests that if any parked-vehicle exception applies to a given set of facts, the motor vehicle was by statutory mandate being "used as a motor vehicle." This ruling is consistent with the statutory language.[6]

---

[5] In examining § 3106(1)(b), and rejecting its applicability, the Court found that the plaintiff did not come into contact with the hook or winch of the truck; rather, he was injured when the cement slab fell from the hook onto his hand. *Winter, supra* at 460.

[6] *Winter* was addressed in *McKenzie,* as we discuss later in this opinion in considering the specifics of *McKenzie.*

The Supreme Court subsequently addressed no-fault coverage of a parked vehicle, somewhat altering the analysis applied in *Winter*. In *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626; 563 NW2d 683 (1997), the plaintiff was injured when she slipped and fell on ice as she was getting into a parked motor vehicle, and the issue presented was whether she was entitled to PIP benefits under the no-fault act. Reversing the decisions of the circuit court and this Court, the Supreme Court held, "On the undisputed facts of this case, plaintiff established as a matter of law that her injury arose from the use of her parked motor vehicle as a motor vehicle under the no-fault act." *Id.* at 627. The Court acknowledged MCL 500.3105, but then proceeded directly to MCL 500.3106 because a parked vehicle was at issue. *Id.* at 631-632. The Court, citing *Winter*, noted that "[w]here the motor vehicle is parked, the determination whether the injury is covered by the no-fault insurer generally is governed by the provisions of subsection 3106(1) alone. There is no need for an additional determination whether the injury is covered under subsection 3105(1)." *Putkamer, supra* at 632-633 (citations omitted). Although *Putkamer* found it unnecessary to engage in any analysis under MCL 500.3105, the following three-step analysis was required under MCL 500.3106:

> In summary, where a claimant suffers an injury in an event related to a parked motor vehicle, he must establish that the injury arose out of the ownership, operation, maintenance, or use of the parked vehicle by establishing that he falls into one of the three exceptions to the parking exclusion in subsection 3106(1). In doing so under § 3106, he must demonstrate that (1) his conduct fits one of the three exceptions of subsection 3106(1); (2) the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle *as a motor vehicle*; and (3) the injury had a causal relationship to the parked motor vehicle that

is more than incidental, fortuitous, or but for. [*Putkamer,*
*supra* at 635-636 (emphasis in original).]

Because there was no dispute that the plaintiff was
getting into the vehicle with the intention of traveling
to her brother's home, the Court found, as a matter of
law, that she was using the parked motor vehicle as a
motor vehicle when she was getting into the car. *Id.* at
636.

A distinguishing feature between *Winter* and *Putka-*
*mer* is that the *Winter* Court indicated that if one of the
parked-vehicle exceptions of § 3106(1) applied, it would
automatically equate to a finding that the parked motor
vehicle was indeed being used as a motor vehicle, which
in turn meant that the plaintiff was entitled to PIP
benefits; however, *Putkamer* required an independent
determination whether the parked vehicle was being
used as a motor vehicle, even if one of the parked-
vehicle exceptions applied. *McKenzie* subsequently ex-
tended *Putkamer* by holding that the question
"[w]hether an injury arises out of the use of a motor
vehicle 'as a motor vehicle' turns on whether the injury
is closely related to the transportational function of
automobiles." *McKenzie, supra* at 215.

*McKenzie*, decided a year after *Putkamer*, involved a
claim for PIP benefits for injuries sustained when the
plaintiff was nonfatally asphyxiated while sleeping in a
camper/trailer attached to his pickup truck. The Court
noted:

This case turns on whether plaintiff's injury, incurred
while sleeping in a parked camper/trailer, arose out of the
use of a motor vehicle "as a motor vehicle" as contemplated
by § 3105. We are able to arrive at this ultimate question
because all agree that this injury was occasioned while a
person was occupying the vehicle as required by MCL
500.3106(1)(c). [*McKenzie, supra* at 216-217.]

Curiously, *McKenzie* cited *Putkamer* in a footnote in support of the above language, despite the fact that *Putkamer* never utilized § 3105 in its analysis concerning the parked motor vehicle.[7] To the contrary, *Putkamer* expressly stated that the analysis was controlled by MCL 500.3106.[8] Nonetheless, both *McKenzie* and *Putkamer* held that even if one of the parked-vehicle exceptions applies, it is necessary to determine whether the injury arose out of the use of a motor vehicle as a motor vehicle.

With respect to the determination whether a motor vehicle was being used as a motor vehicle, the *McKenzie* Court ruled that "the clear meaning of this part of the no-fault act is that the Legislature intended coverage of injuries resulting from the use of motor vehicles when closely related to their transportational function and only when engaged in that function." *McKenzie, supra* at 220. Because the parked camper/trailer was being used as sleeping accommodations, the use was too far removed from the transportational function to constitute use of the vehicle "as a motor vehicle" at the time the injury occurred. *Id.* at 226.

In assessing *McKenzie's* extended analysis in the context of previous decisions, the *McKenzie* Court noted that *Putkamer* had been correctly decided because "entering a vehicle in order to travel in it is closely related to the [vehicle's] transportational function[.]" *McKenzie, supra* at 221. With regard to *Winter*, the Court stated:

---

[7] The *McKenzie* Court incorporated the three-step analysis for parked motor vehicles that was enunciated in *Putkamer. McKenzie, supra* at 217 n 3.

[8] This Court in *Rice, supra* at 33-34, recognized this discrepancy and simply concluded that *McKenzie* retreated from *Putkamer's* alternative analytical approach.

The *Winter* Court's holding turned on the fact that the truck was parked and none of the exceptions set forth in § 3106 applied. Accordingly, it was unnecessary to explicitly consider whether the injury arose out of the use of a motor vehicle "as a motor vehicle," as opposed to some other use. However, this holding is nonetheless consistent with the approach posited here because the injury arose out of the use of a motor vehicle as a foundation for construction equipment and was not closely associated with the transportational function. [*McKenzie, supra* at 221.]

However, a straightforward reading of *Winter* shows that the Court would not have independently determined whether the tow truck was being used as a motor vehicle when the injury occurred even if the Court had found applicable one of the parked-vehicle exceptions of MCL 500.3106. The *Winter* Court indicated that if a parked-vehicle exception applied, it necessarily meant that the parked vehicle was being used as a motor vehicle given the statutory scheme. *Winter, supra* at 457-458. *McKenzie* essentially concurred in the result reached in *Winter*, but on the basis of reasoning not encompassed in the *Winter* Court's analysis. *McKenzie* clearly does not permit a conclusion that PIP benefits are recoverable simply on the basis that one of the parked-vehicle exceptions applies to the facts of the case.

The *McKenzie* Court also addressed, and overruled, the Supreme Court's decision in *Bialochowski*. With respect to *Bialochowski*, the *McKenzie* Court stated:

In *Bialochowski*, this Court concluded that an injury incurred while a cement truck was unloading its product arose out of the use of a motor vehicle as a motor vehicle. The Court stated at 228:

"Motor vehicles are designed and used for many different purposes. The truck involved in this case is a cement

truck capable of pouring cement at elevated levels. Certainly one of the intended uses of this motor vehicle . . . is to pump cement. The accident occurred while this vehicle was being used for its intended purpose. We hold that the phrase 'use of a motor vehicle as a motor vehicle' includes this use."

We find this holding utterly antithetical to the language of § 3105. As discussed above, § 3105's requirement that injuries arise out of the use of a motor vehicle "as a motor vehicle" clearly distinguishes use "as a motor vehicle" from other possible uses. *Bialochowski* eviscerates this distinction by holding that the use of the vehicle at issue to pump cement constitutes use "as a motor vehicle." Obviously, motor vehicles are designed and used for various purposes as the *Bialochowski* Court noted. In fact, only in the context of various possible uses would a limitation to use "as a motor vehicle" be necessary. Where the Legislature explicitly limited coverage under § 3105 to injuries arising out of a particular use of motor vehicles—use "as a motor vehicle"—a decision finding coverage for injuries arising out of any other use, e.g., to pump cement, is contrary to the language of the statute. Accordingly, we are convinced that *Bialochowski* was wrongly decided.

Entirely apart from this direct criticism of *Bialochowski*, we do not think it constitutes adequate support for the dissent's proposed rule that any intended use of a multipurpose vehicle constitutes use "as a motor vehicle." [*McKenzie, supra* at 223-224.]

*McKenzie's* analysis of MCL 500.3105 is contrary to the ruling in *Putkamer*, and to some degree the ruling in *Winter*, relative to its focus on the language of MCL 500.3106, which specifically addresses parked motor vehicles. Interestingly, the *Bialochowski* Court, like the *McKenzie* Court, also analyzed the case under § 3105 to determine whether the cement truck was being used as a motor vehicle at the time of injury *and* under § 3106, pursuant to which the Court found appli-

cable § 3106(1)(b),[9] which is the provision at issue here. However, the *Winter* Court overruled *Bialochowski* to the extent that the latter could be read to mean that a determination whether § 3105(1) is fulfilled is to be made separately from a determination whether § 3106 is fulfilled. *Winter, supra* at 458 n 10. The *Putkamer* Court pointed out this fact when remarking that the analysis is confined to § 3106 when parked vehicles are at issue. *Putkamer, supra* at 633 n 6.

Despite the confusion created by the case law, because *McKenzie* dealt with injuries that were sustained while occupying a parked motor vehicle, which implicated § 3106(1)(c), and because *McKenzie* overruled *Bialochowski*, which specifically dealt with the subsection at issue here, § 3106(1)(b), it appears that the *McKenzie* "transportational function" test controls our analysis.

*McKenzie*, when addressing and overruling *Bialochowski*, did not acknowledge or reference the fact that *Bialochowski* applied § 3106(1)(b), and thus *McKenzie* did not confront, at least expressly, the inherent problem in reconciling the "transportational function" test with the plain language of § 3106(1)(b). Indeed, the general concept of applying a test that focuses on the *transportational function* of a vehicle when considering *parked* vehicles seems illogical and consequently is, for all practical purposes, unworkable. This is especially true in relation to § 3106(1)(b), which speaks of injuries resulting from physical contact with permanently mounted equipment, while the equipment is being operated, or injuries incurred during the loading or

---

[9] The Court found that the plaintiff's injury occurred as a result of his contact with the boom, which was permanently mounted on the truck, while the pump and boom were being operated or used to pump concrete. *Bialochowski, supra* at 229.

unloading process. This language necessarily entails situations where injuries arise from uses of the vehicle other than those uses related to the transportational function of the vehicle.

Because of the inherent inconsistency with the statutory language, the *McKenzie* analysis is suspect as a test for applying the parked-vehicle exceptions under § 3106. Given the practical difficulties in applying *McKenzie* and its eviscerating effect on MCL 500.3106, we urge that it be reconsidered by the Supreme Court or that the Legislature clarify the parked-vehicle exceptions.

### V. DISPOSITION

Summary disposition for plaintiff on the issue of no-fault liability was proper. In light of our disposition of this issue, we decline to reach any alternative arguments raised by plaintiff.

Affirmed.

MURPHY, J., concurred.

ZAHRA, P.J. (*dissenting*). I respectfully dissent. Contrary to the majority, I find no inconsistency between *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214; 580 NW2d 424 (1998), and the express language of MCL 500.3105 and 500.3106. I conclude plaintiff's injuries did not arise out of the use of a motor vehicle as a motor vehicle. I would reverse and remand for entry of a judgment in favor of defendant.

Sections 3105 and 3106 must be satisfied in order for plaintiff to prevail. Section 3105(1) precludes personal protection insurance unless the "accidental bodily injury aris[es] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . . " Section 3106 expressly precludes recov-

ery for accidental bodily injury arising out of the "ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle" unless one of three statutorily defined exceptions exists. That § 3106 defines limited situations in which the Legislature permitted recovery for accidental injury that arose while interacting with a parked vehicle does not eviscerate the threshold question whether the injury arises out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. The majority would, in essence, ignore § 3105 whenever an injury relates to a parked vehicle. Such an interpretation flies in the face of the well-established rules of statutory construction cited by the majority and embraced by *McKenzie*.

I also disagree with the majority's conclusion that plaintiff's injury arose out of the use of a motor vehicle as a motor vehicle. The facts of this case cannot be distinguished from *Bialochowski v Cross Concrete Pumping Co*, 428 Mich 219; 407 NW2d 355 (1987), which *McKenzie* squarely rejected. *Bialochowski* involved a cement truck with a

> [p]ermanently attached . . . concrete pump and a thirty- to thirty-five-foot boom . . . , which was used to pump concrete up to the elevated levels. [The] [p]laintiff was injured in the course of his employment when the concrete pump exploded, causing the boom to collapse upon [the] plaintiff, crushing him. At the time of the accident, the truck was parked and stabilized. [*Bialochowski, supra* at 222-223.]

The majority opinion concludes there is "a fundamental difference between *Bialochowski* and the case at bar" solely because the vehicle in *Bialochowski* was stabilized. This distinction is insignificant, particularly given that *McKenzie* found the holding in *Bialochowski* "utterly antithetical to the language of § 3105 . . . ."

*McKenzie, supra* at 224. Further, the vehicle here first had to hydraulically extend its boom to the top of a silo, and only then, using three independently powered augers, did it move feed through the boom and into the silo. "Where the Legislature explicitly limited coverage under § 3105 to injuries arising out of a particular use of motor vehicles—use 'as a motor vehicle'—a decision finding coverage for injuries arising out of any other use, e.g., to pump cement, is contrary to the language of the statute." *Id.* Here, the majority has improperly found coverage for injuries that arose out of use of a vehicle to pump feed into a silo.

I would reverse the judgment entered in favor of plaintiff and remand for entry of judgment in favor of defendant because plaintiff's injury clearly did not arise out of the use of a motor vehicle as a motor vehicle. MCL 500.3105; *McKenzie, supra.*