# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES WALEGA,

Plaintiff-Appellee,

v

KATHLEEN WALEGA and STATE FARM
MUTUAL AUTOMOBILE INSURANCE
COMPANY,

Defendants,

and

FARM BUREAU INSURANCE COMPANY,

Defendant-Appellant.

FOR PUBLICATION
September 10, 2015
9:05 a.m.

No. 321721
Macomb Circuit Court
LC No. 2012-004598-NI

Before: TALBOT, P.J., and WILDER and FORT HOOD, JJ.

WILDER, J.

In this action for no-fault benefits, defendant, Farm Bureau Insurance Company, appeals as of right from an order entering judgment for plaintiff, Charles Walega, in the amount of $75,000, but preserving defendant's right to appeal the trial court's grant of summary disposition in favor of plaintiff and denial of defendant's motion for reconsideration. Because we conclude that plaintiff's injury arose out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, we affirm.

On November 2, 2011, plaintiff, with the assistance of his wife, Kathleen Walega, was moving a gun safe that weighed over 1500 pounds. It is undisputed that plaintiff's truck was being used to assist in moving the safe. However, there is a factual dispute regarding how the safe was being moved and the location of the safe at the time the injury occurred.

According to defendant, the safe had been attached to the truck by way of a rope, but was still on the ground while it was being moved. Defendant relies on medical records, as well as a statement posted on Facebook by Kathleen after the accident, which indicate that Kathleen was driving the truck with the safe attached to the trailer hitch by way of the rope. While the truck was dragging the safe out of the garage into the driveway, the safe hit uneven concrete, causing it

-1-

to flip over and land on plaintiff's leg. Plaintiff and Kathleen, however, testified at their depositions that the safe was already partially loaded into the bed of the truck, and that when the truck hit the uneven portion of the driveway, the safe fell out of the truck and onto plaintiff's leg.

Under either scenario, it is undisputed that the truck was being driven by Kathleen at the time the safe fell and landed on plaintiff's leg. It is also undisputed that following the injury, plaintiff underwent multiple surgeries before his left leg was eventually amputated below the knee.

On March 2, 2012, plaintiff sought personal protection insurance (PIP) benefits from defendant. In seeking the benefits, plaintiff claimed that the injury occurred when Kathleen accelerated the truck over the pavement, causing the safe to fall out of the bed of the truck. Plaintiff also claimed in the letter that, even if the rope had broken before the truck had been moved, he would still be entitled to benefits under MCL 500.3106(1)(b).[1] On April 4, 2012, defendant informed plaintiff's attorney that it disagreed that plaintiff would be entitled to PIP benefits if the fall occurred during "preparation for loading and before loading itself." Defendant also noted factual discrepancies regarding what occurred, indicated that absent under oath examination the investigation could not be advanced, and stated that PIP benefits would not be provided as plaintiff had "not provide[d] reasonable proof of coverage of the claim."

Plaintiff initiated the instant lawsuit on October 9, 2012. Following discovery and other matters, plaintiff filed his motion for summary disposition pursuant to MCR 2.116(C)(10) on September 5, 2013. Plaintiff argued that he was entitled to coverage under MCL 500.3105 because, even under defendant's version of the facts, plaintiff was attempting to tow the safe with the moving truck. Using a truck to transport heavy objects is a normal use of a truck. Further, the moving truck was not merely the location of the injury. Rather, the injury was directly related to the use of the truck as a mode of transportation.

Defendant filed its response on September 16, 2013, arguing that plaintiff's injuries did not arise out of the transportational function of a motor vehicle because the truck was either being used as an immobile anchor point for the rope or was pulling the skidding safe. Defendant claimed that the truck was being used as a tool and was not being driven on a public roadway. Defendant also argued that if the facts of the loss were as stated by Kathleen, then plaintiff made misrepresentations and the policy was void. Accordingly, defendant argued, there was a genuine issue of material fact and summary disposition was not warranted.

---

[1] MCL 500.3106(1)(b) provides:

> Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

Without holding oral argument, the trial court granted plaintiff's motion for summary disposition, in part, on September 30, 2013. The trial court ruled that plaintiff was entitled to PIP benefits under either plaintiff's version or defendant's version of events:

> As noted, plaintiff has attributed the accident to the process of loading the safe into his truck. He then planned to drive the safe to a buyer. Under these circumstances, plaintiff would be entitled to PIP benefits. MCL 500.3106(1)(b).
>
> Defendant Kathleen Walega posted a Facebook entry on November 5, 2011 describing the accident as happening while the safe was being moved from the garage. Under this version, plaintiff had tied a rope around the safe and defendant Kathleen Walega was using the truck to pull the safe from the garage so it could be loaded into the truck. As the safe dragged across the driveway, it hit a raised portion of the pavement and tipped over onto plaintiff's foot. Under these circumstances, plaintiff would also be entitled to PIP benefits because the truck was being used (i.e., was not parked) to move the safe—even if for a short distance—and the safe was connected to the truck. *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214; 580 NW2d 424 (1998) (coverage applicable if use of vehicle is closely related to its transportational function at the time of injury); see also *Block v Citizens Ins Co of America*, 111 Mich App 106; 314 NW2d 536 (1981) (no coverage when accident occurs while carrying items to vehicle and there is no actual connection to vehicle).

The trial court went on to state, however, that defendant's fraud claim, based on allegations that Kathleen changed her story to support plaintiff's version of events, was a defense that had to be decided by the jury. The trial court also concluded that plaintiff's asserted damages were subject to reasonable dispute.

On October 22, 2013, defendant sought reconsideration and clarification of the trial court's order. Defendant argued, *inter alia*, that the trial court did not address the possible use of the motor vehicle as an anchor point and requested clarification based on the trial court's apparently contradictory ruling that plaintiff was entitled to PIP benefits, but that defendant was entitled to present its fraud defense to the jury.

On November 4, 2013, the trial court denied the motion for reconsideration, noting that defendant's argument was the same as that made in its response to summary disposition and further stating:

> [D]efendant Farm Bureau fails to cite any authority for the proposition that an item must be moved some minimum distance to satisfy the transportational function test for PIP coverage. Moreover, coverage has been afforded for dragging items behind a vehicle. See *Smith v Community Service Ins Co*, 114 Mich App 431; 319 NW2d 358 (1982) (plaintiff injured while riding an inner tube being towed by a motor vehicle entitled to coverage).
>
> As previously noted, the evidence only suggests the safe either fell from the back of a moving truck or tipped over while being dragged by a moving truck.

-3-

Hence, there was no need to discuss the possible use of the truck as a stationary anchor point or tool.

Finally, the trial court clarified its earlier opinion regarding the fraud defense:

> The subject policy voids coverage if there is an intentionally concealed or misrepresented material fact or circumstance, fraudulent conduct or false statement relating to a loss. Family Auto Policy, Part V, § C.[2] Thus, defendant Farm Bureau could only void coverage if a *material* fact or statement relating to plaintiff's loss was misrepresented or falsely made. However, as both factual scenarios result in coverage for plaintiff's loss, any misrepresented or false fact or statement was not material to plaintiff's loss. Consequently, defendant Farm Bureau's fraud defense does not preclude summary disposition on the issue of plaintiff's entitlement to PIP coverage and should not have been noted as requiring submission to the jury for resolution. [Footnote added.]

On May 2, 2014, the parties stipulated to entry of judgment in favor of plaintiff, subject to defendant reserving its right to appeal the trial court's ruling on the summary disposition motion and motion for reconsideration. On May 12, 2014, defendant filed the instant appeal.[3]

On appeal, defendant argues that the trial court erred in concluding that plaintiff was using his truck as a motor vehicle at the time the injury occurred. We disagree.

We review de novo the trial court's ruling on a motion for summary disposition. *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007).

> "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties.

---

[2] Part V, § C of the relevant policy provides:

> The entire policy will be void if, whether before or after a loss, you, any **family member**, or any **insured** under this policy has:
>   1. intentionally concealed or misrepresented any material fact or circumstance;
>   2. engaged in fraudulent conduct; or
>   3. made false statements;
> relating to this insurance or to a loss to which this insurance applies.

[3] Before the judgment, defendant filed an application for leave to appeal on November 25, 2013. The leave application was dismissed pursuant to defendant's motion to withdraw the appeal. See *Walega v Walega*, unpublished order of the Court of Appeals, entered May 20, 2014 (Docket No. 319233).

-4-

Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004) (citations omitted)].

We also review de novo questions of law, including statutory interpretation. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

The primary goal of statutory interpretation is to "ascertain the legislative intent that may reasonably be inferred from the statutory language." "The first step in that determination is to review the language of the statute itself." Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, "[t]he words of a statute provide 'the most reliable evidence of its intent. . . . ' " [*Krohn v Home-Owners Ins Co*, 490 Mich 145, 156-157; 802 NW2d 281 (2011) (citations omitted).]

In addition, as noted in *Churchman v Rickerson*, 240 Mich App 223, 228-229; 611 NW2d 333 (2000):

The no-fault act generally is to be construed liberally because it is remedial in nature. *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 631; 563 NW2d 683 (1997). However, this rule of construction is intended to apply to the payment of benefits to injured parties, who were intended to benefit from the adoption of no-fault legislation. *Id*. Where appropriate, the act should be broadly construed to effectuate coverage. *McMullen v Motors Ins Corp*, 203 Mich App 102, 107; 512 NW2d 38 (1993).

MCL 500.3105(1) provides:

Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

Analyzing the use of the term "as a motor vehicle" in MCL 500.3105(1), our Supreme Court stated in *McKenzie*, 458 Mich at 218-219:

As a matter of English syntax, the phrase, "use of a motor vehicle 'as a motor vehicle'" would appear to invite contrasts with situations in which a motor vehicle is not used "as a motor vehicle." This is simply to say that the modifier "as a motor vehicle" assumes the existence of other possible uses and requires distinguishing use "as a motor vehicle" from any other uses. While it is easily understood from our experiences that most often a vehicle is used "as a motor vehicle," i.e., to get from one place to another, it is also clear from the phrase that the Legislature wanted to except those occasions, rare as they may be, when a motor vehicle is used for other purposes, e.g., as a housing facility of sorts, as an

advertising display (such as at a car dealership), as a foundation for construction equipment, as a mobile public library, or perhaps even when a car is on display in a museum. On those occasions, the use of the motor vehicle would not be "as a motor vehicle," but as a housing facility, advertising display, construction equipment base, public library, or museum display, as it were. It seems then that when we are applying the statute, the phrase "as a motor vehicle" invites us to determine if the vehicle is being used for transportational purposes.

The *McKenzie* Court went on to state that, under the Motor Vehicle Code, " '[v]ehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway . . . ." *Id.* at 219, quoting MCL 257.79. In addition to the statutory definition of vehicle, the *McKenzie* Court also noted that "the dictionary definition of 'vehicle' is 'any device or contrivance for carrying or conveying persons or objects, esp. over land or in space . . . .' " *McKenzie*, 458 Mich at 219, quoting *Webster's New World Dictionary*, *Third College Edition*. Based on these definitions, the Court held "that the clear meaning of this part of the no-fault act is that the Legislature intended coverage of injuries resulting from the use of motor vehicles when closely related to their transportational function and only when engaged in that function." *McKenzie*, 458 Mich at 220. Applying the transportational function test, the *McKenzie* Court held that the insured in that case was not entitled to PIP benefits for injuries that resulted while using the vehicle as sleeping accommodations as such use was "too far removed from the transportational function to constitute use of the camper/trailer 'as a motor vehicle' at the time of the injury." *Id.* at 226.

In the instant case, viewing the facts in a light most favorable to defendant, it is undisputed that the insured truck was being driven for purposes of moving the safe. As noted in *McKenzie*, 458 Mich at 221, "moving motor vehicles are quite obviously engaged in a transportational function." While defendant attempts to limit the importance of this statement, it is clear that in the case at bar, the truck was moving for the purpose of transporting or conveying the safe from one location to another when the injury occurred. Thus, "the requisite nexus between the injury and transportation function of the motor vehicle" is present. *Id.* at 226.

Defendant relies on *Morosini v Citizens Ins Co of America*, 461 Mich 303, 310; 602 NW2d 828 (1999), which states that "[c]overage is not mandated by the fact that the injury occurred within a moving vehicle . . . ," noting that "[i]ncidental involvement of a motor vehicle does not give rise to coverage . . . ." However, defendant fails to note that *Morosini* made such statements based on the holdings of *Thornton*, 425 Mich 643, *Marzonie v ACIA*, 441 Mich 522; 495 NW2d 788 (1992), and *Bourne v Farmers Ins Exchange*, 449 Mich 193; 534 NW2d 491 (1995). Each of those cases dealt with situations where the driver of the vehicle was injured after being assaulted by third parties. None of them were injured as a result of a motor vehicle accident. *Morosini*, 461 Mich at 307-309, citing *Thornton*, 425 Mich at 660, *Marzonie*, 441 Mich at 534, and *Bourne*, 449 Mich at 203. Indeed, *Morosini* itself involved a claim for PIP benefits not as a result of injuries that occurred in a car accident, but rather as a result of injuries incurred when the plaintiff was assaulted by the driver who rear-ended him. *Morosini*, 461 Mich

at 305. As such, it is clear that *Morosini* and the cases relied on therein (*Thornton*, *Marzonie*, and *Bourne*) are clearly distinguishable from the instant case.[4]

Defendant also attempts to argue that this case is akin to *Gooden v Transamerica Ins Corp*, 166 Mich App 793; 420 NW2d 877 (1988). However, in that case, the plaintiff was using his parked truck to "ensure greater stability and to extend the ladder's reach" as the plaintiff was "chipping ice off the roof of a friend's home." *Id.* at 795. In other words, the plaintiff was simply using the truck to stabilize and extend the ladder. *Id.* at 805-806. He was not using the truck to transport anything.

Defendant also relies on *Winter v Automobile Club of Michigan*, 433 Mich 446; 446 NW2d 132 (1989). However, that case dealt with exceptions to the parked vehicle exclusion, *id.* at 455, and, as noted in *McKenzie*, was also consistent with the Court's approach in *McKenzie*, as the "injury arose out of the use of a motor vehicle as a foundation for construction equipment and was not closely associated with the transportational function." *McKenzie*, 458 Mich at 221.[5]

We agree with plaintiff that this case is similar to *Smith v Community Service Ins Co*, 114 Mich App 431; 319 NW2d 358 (1982), a case decided before November 1, 1990. The *Smith* plaintiff "was injured while riding on an inner-tube which was being towed by the insured vehicle." *Id.* at 432. In finding that the plaintiff was entitled to PIP benefits, this Court stated:

> [T]he motor vehicle itself was the instrumentality of the plaintiff's injury. At the time of the accident the vehicle was being driven down a public roadway which is a use which is certainly consistent with its inherent nature and in accordance with its intended purpose. It was being used, therefore, as a motor vehicle and as a motor vehicle would normally be used. The fact that it may not have been contemplated, as the defendant argues, that the operator of a motor vehicle would pull someone in an inner-tube over a snow-covered road, or the fact that it may have been negligent or even illegal to do so, is no defense to coverage under the provisions of the no-fault act. The act is certainly intended to compensate for injuries sustained as the direct result of negligent or unexpected use of a motor vehicle so long as the vehicle is being used "as a motor vehicle."

---

[4] In *McKenzie*, the Court stated that the analysis used in *Thornton*, focusing on "whether the alleged injury was causally related to the 'vehicular use,' 'functional character,' or 'functional use' of a motor vehicle," supported the transportational function approach. *McKenzie*, 458 Mich at 222-223, quoting *Thornton*, 425 Mich at 660-661. The *McKenzie* Court stated that, its approach, "focusing on the transportational function, makes the same distinction and provides a more specific definition for these terms." *McKenzie*, 458 Mich at 223.

[5] Defendant further attempts to rely on several unpublished opinions to support its position that the truck in this case was not being used "as a motor vehicle" at the time it was being used to move the safe. In addition to being not precedentially binding on this Court, see MCR 7.215(C)(1), these cases are distinguishable from the instant case.

To be entitled to PIP benefits a claimant must establish a causal connection, which is more than fortuitous, incidental or but for, between the use of the motor vehicle and the injury sustained. *DAIIE v Higginbotham*, [95 Mich App 213; 290 NW2d 414 (1980).] We find that such a causal connection is established under the facts of this case. An injury which directly results from the force of a motor vehicle which is being driven down a roadway in a normal manner is an injury which arises "out of the * * * operation * * * or use of a motor vehicle as a motor vehicle * * *." [*Smith*, 114 Mich App at 434-435.]

Similarly, in this case, plaintiff's injury resulted from the force of the motor vehicle hitting uneven concrete causing the safe to fall over and onto plaintiff's leg. Whether the safe was inside the bed of the truck or being pulled by a rope from the back of the truck at the time the safe fell over, the truck "was the instrumentality of plaintiff's injury." *Smith*, 114 Mich App at 434. Driving a truck to transport something is "consistent with its inherent nature and in accordance with its intended purpose." *Id.* Although the particular method used to transport the safe, i.e., dragging, may not have been contemplated, the use of a truck to transport something is a normal use. Thus, the injury occurred while the truck was being used as a motor vehicle. *Id.*[6]

Finally, in *Drake v Citizens Ins Co*, 270 Mich App 22, 24; 715 NW2d 387 (2006), the plaintiff was injured while "assisting [the delivery truck driver] in unclogging the truck's auger system," as the driver attempted to unload animal feed. In holding that the plaintiff was entitled to PIP benefits, this Court specifically stated that the situation in *Drake* was "unlike those circumstances identified in *McKenzie* as rare instances 'when a motor vehicle is used for other purposes.' " *Drake*, 270 Mich App at 26, quoting *McKenzie*, 458 Mich at 219. This Court noted that the vehicle involved in *Drake* was "a delivery truck, and it was being used as such when the injury occurred." *Drake*, 270 Mich at 26. Accordingly, this Court held that the plaintiff's injury was "closely related to the motor vehicle's *transportational function* and therefore arose out of the operation, ownership, maintenance, or use of a motor vehicle 'as a motor vehicle.'" *Id.*, citing *McKenzie*, 458 Mich at 220.

In the present case, plaintiff was using a truck to move or transport a very heavy safe, at a minimum, from his garage to his driveway. It is normal and foreseeable to use a truck, attached with a trailer hitch, to move heavy objects. Accordingly, plaintiff's injury was closely related to the transportational function of the vehicle and, therefore, arose out of the operation, ownership, maintenance, or use of a motor vehicle "as a motor vehicle." For the above reasons, we hold that the trial court did not err when it held that plaintiff was entitled to PIP benefits.

---

[6] Defendant's attempt to distinguish *Smith* on the basis that the truck in *Smith* was being driven down a public roadway, as opposed to in the driveway, is unpersuasive. Defendant has not provided any case law, and we have not located any, that suggests that an injury that occurred in a driveway as opposed to a roadway is any less cognizable under the no-fault act. Rather, "as § 3106 indicates, a vehicle need not be moving at the time of an injury to arise out of the use of a motor vehicle as a motor vehicle, i.e., out of its transportational function." *McKenzie*, 458 Mich at 219 n 6.

Affirmed. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219.

/s/ Kurtis T. Wilder
/s/ Michael J. Talbot
/s/ Karen M. Fort Hood