# Court of Appeals, State of Michigan

## ORDER

Michael J. Talbot, Chief Judge, acting under MCR 7.211(E)(2), orders:

The opinions in the following appeals are hereby AMENDED to correct a clerical error in the date of issuance. The date on the opinions is corrected to read April 10, 2018.

**334631 People of MI v Maurice Larnell Glover**

**335396 People of MI v Robert Daren Hale**

**336245 People of MI v Toriono Kent**

**336893 Goldcorp Inc v Varoujan M Basmajian**

**337595 Jeffery Beck v Alpine Shredders Limited**

**337951 Teddy 23 LLC v Department of Treasury**

In all other respects, the opinions remain unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

APR 1 0 2018
_____
Date

_____
Chief Clerk

JEFFERY BECK,

      Plaintiff-Appellant,

and

LIBERTY MUTUAL INSURANCE COMPANY,

      Intervening Plaintiff-Appellee,

v

ALPINE SHREDDERS LIMITED,

      Defendant.

UNPUBLISHED
April 9, 2018

No. 337595
Macomb Circuit Court
LC No. 2015-000663-NP

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Plaintiff appeals as of right an order of the circuit court entering judgment in the amount of $196,306.57 in favor of intervening plaintiff, Liberty Mutual Insurance Company (Liberty Mutual). The trial court dismissed plaintiff's claims according to a settlement agreement entered after the trial court's February 9, 2017, opinion and order, which found that Liberty Mutual had a lien on the full amount of no-fault benefits paid to plaintiff by a no-fault insurer and any judgment or settlement amounts paid to plaintiff. We reverse and remand.

Plaintiff was severely injured when, while operating a paper shredding truck at his employment, he attempted to dislodge a paper jam in the roller that operates a conveyer belt in the rear of the truck and his arm became caught in the moving roller system. He received no-fault insurance benefits as a result of his injuries. Plaintiff brought suit against defendant, the manufacturer of the paper shredding truck, for negligence, breach of implied warranties, and breach of express warranties. Liberty Mutual, the provider of plaintiff's workers' compensation insurance, filed a notice of lien on any settlement or judgment in favor of plaintiff for the $235,361.59 in workers' compensation benefits it had paid to plaintiff, thus far. Plaintiff thereafter filed a motion to determine the extent of any workers' disability compensation lien asserted by Liberty Mutual. The trial court first permitted Liberty Mutual to intervene in the action in order to "correct a procedural defect" and then recognized the principle that when an employee is injured in a motor vehicle accident in the course of his employment workers'

-1-

compensation benefits generally substitute for no-fault benefits and that a workers' compensation carrier is not entitled to reimbursement for payments which substitute for no-fault insurance benefits. The trial court found that the paper shredding truck was not being used as a motor vehicle at the time of plaintiff's injury and that payment of no-fault benefits to plaintiff was thus improvidently made. As a result, the trial court determined that the first three years of wage loss benefits paid by Liberty Mutual did not substitute for no-fault benefits and that Liberty Mutual was thus entitled to a lien for all of the workers' compensation benefits paid to plaintiff.

Shortly after the trial court resolved plaintiff's motion, plaintiff and defendant agreed to a settlement. The lawsuit was thus dismissed and a judgment in the amount of $196,306.57 entered in favor of Liberty Mutual and against plaintiff pursuant to its workers' compensation lien. Plaintiff was ordered to reimburse Liberty Mutual for that amount from his settlement proceeds. This appeal followed.

On appeal, plaintiff argues that the trial court erred by finding that the shredding truck was not being used as a motor vehicle at the time he was injured and that the no-fault benefits were "improvidently paid" to him. This Court reviews questions of law, such as the extent of a workers' compensation lien, de novo. *McKenney v Crum & Forster*, 218 Mich App 619, 622; 554 NW2d 600 (1996).

Workers' compensations benefits that are paid to an employee that was injured in a motor vehicle accident while working substitute for no-fault benefits to the extent that the workers' compensation benefits duplicate what would otherwise be no-fault benefits. *Hearns v Ujkaj*, 180 Mich App 363, 367; 446 NW2d 657 (1989), citing *Great American Ins Co v Queen*, 410 Mich 73, 96; 300 NW2d 895 (1980). "A workers' compensation carrier is not entitled to reimbursement for payments which substitute for no-fault benefits." *Hearns*, 180 Mich App at 367, citing *Great American Ins Co*, 410 Mich at 85. But, "[t]o the extent that payment of workers' compensation benefits exceeds the no-fault benefits which are otherwise payable, the workers' compensation carrier is entitled to a lien against an injured employee's third-party recovery for reimbursement of the excess." *Hearns*, 180 Mich App at 367-368, citing *Bialochowski v Cross Concrete Pumping Co*, 428 Mich 219, 230-231; 407 NW2d 355 (1987), overruled in part on other grounds *Winter v Auto Club of Mich*, 433 Mich 446, 458 n 10; 446 NW2d 132 (1989). Additionally, a workers' compensation carrier that paid benefits is entitled to reimbursement where the injured employee recovers in a third-party tort action. *Beaudrie v Anchor Packing Co*, 206 Mich App 245, 247-248; 520 NW2d 716 (1994).

Because a no-fault insurer is generally required to pay personal protection benefits for three years following an accident (see MCL 500.3107), and, to the extent that the workers' compensation benefits paid to plaintiff did not exceed what no-fault benefits would have been paid, Liberty Mutual's payments would have been substitute benefits for three years and would not be recoverable. *Hearns*, 180 Mich App at 368. The issue here is whether the no fault benefits were, in fact, owed and properly paid to plaintiff. If they were not, as asserted by Liberty Mutual (and found by the trial court), then the workers' compensation benefits it paid to plaintiff did not substitute for *any* no fault benefits and Liberty Mutual was entitled to seek reimbursement for all of the workers' compensation benefits it had paid, including those paid for the first three years following the injury. Where a trial court finds "that payment of benefits was improvidently made by the no-fault carrier," a workers' compensation carrier may assert a lien

for reimbursement of paid benefits because the benefits were not properly a substitute for no-fault benefits. *McKenney*, 218 Mich App at 622-623.

"The no-fault insurance act is remedial in nature and must be liberally construed in favor of persons intended to benefit . . . ." *Copus v MEEMIC Ins Co*, 291 Mich App 593, 596; 805 NW2d 623 (2011) (citation and quotation marks omitted). MCL 500.3105(1) provides: "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." A motor vehicle need not necessarily be moving in order to trigger the payment of no fault benefits. Indeed, MCL 500.3106(1) outlines the situations where no-fault benefits are payable as a result of injuries resulting from the use of a parked vehicle:

Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

> (b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

> (c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

As stated in *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 635-636; 563 NW2d 683 (1997), abrogation in part recognized in *Rice v Auto Club Ins Ass'n*, 252 Mich App 25 (2002), to be entitled to no-fault benefits for an injury that occurs as a result of an accident involving a parked motor vehicle:

> [A claimant] must demonstrate that (1) his conduct fits one of the three exceptions of subsection 3106(1); (2) the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle as a motor vehicle; and (3) the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for.

Here, there is no dispute that plaintiff was injured by "physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used." MCL 500.3106(1)(b). He thus meets the first prong of the test stated in *Putkamer*. As to the second prong, "even if one of the parked-vehicle exceptions applies, it is necessary to determine whether the injury arose out of the use of a motor vehicle as a motor vehicle." *Drake v Citizens Ins Co of America*, 270 Mich App 22, 35; 715 NW2d 387 (2006).

In *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 220; 580 NW2d 424 (1998), the Court clarified that the use of motor vehicles as motor vehicles occurs "when [their use is] closely related to their transportational function and only when engaged in that function." The

Court concluded that "when we are applying the statute, the phrase 'as a motor vehicle' invites us to determine if the vehicle is being used for transportational purposes." *Id*. at 219. The Court explained that instances where a motor vehicle was not being used for getting "from one place to another" were rare and included use "as a housing facility, advertising display, construction equipment base, public library, or museum display . . . ." *Id*. In *McKenzie*, the Court determined that a claimant who was injured while sleeping in a parked camper/trailer was not utilizing the vehicle in its transportational function because it "was being used as sleeping accommodations." *Id*. at 216-217, 226. The "nexus between the injury and the use of the vehicle as a motor vehicle" must be "sufficiently close" to justify the recovery of benefits. *Putkamer*, 454 Mich at 635. To make this determination, we examine the activity the plaintiff was engaged in at the time of the injury. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, ___; 901 NW2d 534, 542 (2017).

At his deposition, plaintiff explained that the process for shredding was to load documents into a 65-gallon bin at the side of the truck that would then dump the documents to the shredder, similar to a garbage truck. Plaintiff explained that the paper entered a shredder at the front part of the rear area of the truck, and the shredded paper fell into a compartment where it was compacted and moved to the back area of the truck. Plaintiff stated that the truck had a grocery store style conveyer belt the entire length of the back of the truck that was used as a part of the unloading because the shredder area discharged paper to "unroll onto the conveyer belt for the paper to be bailed." Plaintiff stated that, when the truck is filled with paper, buttons on the inside are used to unload the paper by using the conveyer belt. Plaintiff believed that the equipment was permanently installed on the truck and that to use the shredding machine, the motor of the shredding truck had to be on (i.e., the vehicle had to be running). Plaintiff further testified that the vehicle cannot drive while the shredder was operating and functioning because, according to his understanding, the shredder ran off the same power that was needed to move the vehicle.

Plaintiff testified that, on May 11, 2013, he had shredded documents at a college and returned to Shred Corp. to unload the truck. Plaintiff described the events, as such:

> [W]e were unloading the truck because the back fills up with paper, so we were putting it on the conveyor belt to bale the paper because we just did a shred event, and then we got in and noticed the back roller was just jammed with paper, and I told Kenny I'm going to clean it out and to go and turn on the machine. So I started cleaning it out, not paying attention to what Kenny was doing, and as I was cleaning it out, you know, the roller was activated, and I believe that - I think, the roller caught my glove and it was done [sic] hill from there.

In *Drake*, 270 Mich App at 26, this Court concluded that a grain delivery truck was being used in its transportational function when it was parked and its driver was unloading grain from it. The plaintiff, who was assisting the driver, was injured when he reached into the delivery auger to remove a clog and the driver activated the augers. *Id*. at 24. The Court reasoned that a delivery truck's transportational purpose includes delivering crops, which was what the truck was doing when the plaintiff was injured. *Id*. at 26. The Court stated that "the vehicle involved is a delivery truck, and it was being used as such when the injury occurred." *Id*.

-4-

More recently, in *Kemp*, 500 Mich 245, ___; 901 NW2d at 544, the Court held that "unloading property from a vehicle upon arrival at a destination constitutes use of a motor vehicle as a motor vehicle and satisfies the transportational function requirement." Here, the facts indicate that plaintiff was in the process of unloading the truck and was using the conveyer system and cleaning out the roller system to facilitate the process at the time of his injury. Thus, because plaintiff's injury occurred as a result of unloading the vehicle, the vehicle remained in its transportational function at the time of the injury.

Here, the shredding truck's purpose included shredding paper at a remote location and expelling the shredded paper utilizing the contained conveyer system at a place where the shredded paper was kept. Further, the facts indicated that there was no mechanical alteration or transformation necessary to the truck for it to perform its function of unloading the final product beyond parking the vehicle and pushing a button in the cab. The facts indicate that, while performing this function, the roller clogged and plaintiff was dislodging the clogged paper at the time he was injured. As the trial court found, "[plaintiff] was in the process of unloading the truck and was attempting to clean out the roller system when his injury occurred." The trial court discussed *Drake*, but did not distinguish it from the instant facts. According to plaintiff, he was using the conveyer to unload the paper when he noticed that the roller of the conveyer had jammed with paper. He dislodged paper from the roller and was injured after a coworker activated the belt. This testimony was not disputed. Thus, the vehicle was a paper-shredding truck and was being utilized as one when the injury occurred. Accordingly, plaintiff was using the shredding truck as a motor vehicle because the vehicle was engaged in its transportational function at the time of the accident, and no-fault benefits were properly paid. *Drake*, 270 Mich App at 26; *Kemp*, 500 Mich 245. The trial court erred by finding that the shredding truck was not functioning in its transportational function at the time of plaintiff's injury, and thus erred in denying plaintiff's motion to limit Liberty Mutual's workers' compensation lien.

Reversed and remanded for proceeding consistent with this opinion. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell