BAGERIS v BRANDON TOWNSHIP

Docket No. 249008. Submitted September 8, 2004, at Detroit. Decided
October 21, 2004, at 9:00 a.m.

Christopher Bageris brought an action in the Oakland Circuit Court
against Brandon Township, alleging a failure to accommodate a
disability under the Persons with Disabilities Civil Rights Act,
MCL 37.1101 *et seq.* The plaintiff, a part-time firefighter, had
applied for full-time employment, but his application was denied
after other applicants outscored him on examinations that in-
cluded a written portion. The court, John J. McDonald, J., granted
summary disposition for the defendant, determining that, al-
though Bageris had provided his employer with a written notice of
his request for an accommodation for disability before the exami-
nation, MCL 37.1210(18), the notice was ineffective because it did
not describe any reason or disability requiring accommodation.
The plaintiff appealed.

The Court of Appeals *held*:

MCL 37.1210(18) requires one with a disability who requests
an accommodation to file a written notice of the need for the
accommodation within 182 days after the person with the disabil-
ity knew or reasonably should have known that an accommodation
was needed. The plaintiff was able to do his fire-fighting tasks
without accommodation, but claimed to need a reader to help with
the examination process because of his dyslexia. In this sort of
discrimination case, to be liable, the employer must have a certain
level of awareness regarding the plaintiff's disability because that
knowledge enables the employer to know what sort of accommo-
dation or remedial action is appropriate. Without some specified
showing of the reason for the requested accommodation, an
employer cannot properly determine whether to grant the re-
quested accommodation.

Affirmed.

CIVIL RIGHTS — PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — ACCOMMODA-
TION BY EMPLOYER — NOTICE.

Notice of a disability by a person seeking accommodation by his
employer must specify the reason for the requested accommoda-

tion, without which the employer cannot properly determine whether to provide the requested accommodation (MCL 37.1210[18]).

*Law Offices of Frank J. Kokenakes, PLC* (by *Frank J. Kokenakes*), for the plaintiff.

*Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.* (by *Marcia L. Howe, Laura S. Amtsbuechler*, and *Carlito H. Young*), for the defendant.

Before: SCHUETTE, P.J., and BANDSTRA and METER, JJ.

BANDSTRA, J. In this claim for failure to accommodate disability, plaintiff appeals as of right the trial court order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). We conclude that plaintiff failed to adequately inform defendant of his alleged disability, resulting in no duty to accommodate. We affirm.

BASIC FACTS

Plaintiff began working with defendant's fire department as a part-time firefighter in 1997. In December 2001, plaintiff applied for one of three full-time firefighter/paramedic positions that became available. The selection process involved a three-part examination consisting of practical, written, and oral portions. Plaintiff scored seventh, among as many applicants, with a combined test score of seventy-one percent. After the top applicant withdrew his name from contention, the remaining top three applicants with the highest combined scores (ranging from eighty-three to ninety-one percent) were offered the full-time positions.

Plaintiff's complaint alleged that defendant violated Michigan's Persons With Disabilities Civil Rights Act

(PWDCRA), MCL 37.1101 *et seq.*, by failing to provide a reasonable accommodation to plaintiff during the written portion of the examination. Specifically, plaintiff alleged that he suffers from dyslexia and that, before the written examination, he informed Fire Department Chief Robert McArthur that he needed a "reader" to assist him during the examination. Plaintiff claims that, as a result of defendant's failure to provide the requested accommodation, he did not do well enough to be awarded a position.

At his deposition, plaintiff testified that he was first diagnosed with dyslexia in junior high school. However, the report from the Livonia Public Schools regarding plaintiff's condition does not specifically state that plaintiff suffered from dyslexia. It indicates only that plaintiff suffered from a "learning disability." Plaintiff testified that, despite the school district's conclusion that he had a learning disability, he never followed up with a visit to a doctor regarding his condition.

Plaintiff further testified that, before the firefighter/paramedic examination, the first time he informed Chief McArthur that he was dyslexic and required a reader was at the orientation for the examination. However, McArthur testified that while plaintiff informed him that he needed a reader, plaintiff never indicated that he needed the reader because he was dyslexic. Rather, McArthur testified that plaintiff told him he needed the reader because "he had difficulty taking tests, [and] that he did not like taking them . . . ."

Plaintiff testified that, two days before the examination, he followed up with Chief McArthur on his initial oral request for a reader by leaving a note on McArthur's desk, reiterating his desire to have a reader for the examination. But McArthur testified that he

never saw the note. Plaintiff also indicated that he went to McArthur's office the following day to ask him whether a reader would be provided. Plaintiff testified that McArthur told him that a proctor would be at the examination, and that if anyone had a question about the examination, they could ask the proctor. Plaintiff also testified that McArthur told all the candidates there would be no time limit for the written portion of the examination; however, "the understanding was that the test was from [9:00 a.m.] until whenever you finish[ed] and then whenever you finished you [could] have lunch but the practical [portion of the examination started at 1:00 p.m.]." McArthur testified that plaintiff never indicated that merely having the proctor available during the written examination was unacceptable. Despite the presence of the proctor during the 130-question examination, plaintiff testified that he did not approach her to ask questions because he believed it would be disruptive for the other test-takers and an embarrassment to himself.

Finally, plaintiff testified that his dyslexia did not affect his work as a part-time firefighter because he was able to keep a dictionary with him to aid him in filling out his job reports. Plaintiff acknowledged that at one point his reports had become so illegible that he was required to practice filling them out. Plaintiff also indicated that his dyslexia had not kept him from his daily activities.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10). Defendant argued that plaintiff's PWDCRA claim was meritless because plaintiff failed to provide any documentary evidence regarding his alleged disability before the examination. Defendant further pointed out that plaintiff was not even diagnosed with dyslexia until he was examined by an expert witness—after he filed the lawsuit. And, although plain-

tiff allegedly provided a note to McArthur requesting a reader for the examination, plaintiff admitted that the note did not specifically inform McArthur that the reader was necessary because plaintiff had dyslexia.[1]

In granting defendant's motion for summary disposition, the trial court first noted that although plaintiff "provide[d] his employer, Chief McArthur, with written notice of his request for an accommodation two days prior to the exam at issue . . . [t]he written notice did not contain the reason or disability requiring the accommodation." The trial court ruled that plaintiff's claim must therefore fail because plaintiff did not provide sufficient documentation of his alleged disability before the examination:

> It further appears undisputed that Plaintiff was not officially diagnosed as dyslexic until after the lawsuit was filed.

> At the time of the requested accommodation it is undisputed that Plaintiff failed to provide his employer with any documentation regarding this disability. The absence of any documentation or other documentary evidence showing Plaintiff was dyslexic is fatal to his claim under the act . . . .

> An allegedly dyslexic Plaintiff is not handicapped under the civil rights statute when Plaintiff fails to provide documentary evidence in support of the allegation.

---

[1] Defendant also argued that plaintiff did not meet the definition of an individual with a "disability" under MCL 37.1103(d)(i)(A). Specifically, defendant pointed out that plaintiff testified that his dyslexia did not prevent him from performing any of his major life activities and argued that plaintiff failed to establish that his dyslexia is "unrelated to [his] ability to perform" the duties of a firefighter/paramedic. *Id.* Further, defendant argued that even if plaintiff met the definition of an individual with a disability, his claim would still fail because he did not establish that defendant failed to reasonably accommodate his alleged disability. These arguments did not form the basis of the trial court's ruling and, in light of our decision to affirm on other grounds, we express no opinion on their merit.

In other words, the trial court ruled that plaintiff could not maintain a claim of failure to accommodate because he had not properly notified defendant in writing of the need for accommodation. MCL 37.1210(18).

We review de novo the grant or denial of a motion for summary disposition. *Monat v State Farm Ins Co*, 469 Mich 679, 682; 677 NW2d 843 (2004). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In evaluating a motion brought under this subsection, we consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

Similarly, statutory interpretation is a question of law that we review de novo. *Golf Concepts v Rochester Hills*, 217 Mich App 21, 26; 550 NW2d 803 (1996). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Draprop Corp v City of Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001). The first criterion in determining legislative intent is the specific language of the statute. *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written." *Wickens v Oakwood Healthcare Sys*, 465 Mich 53,

60; 631 NW2d 686 (2001). "In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Id.*

### DISCUSSION

The only issue properly presented to us for review is whether the trial court correctly concluded that plaintiff failed to provide sufficient written notice regarding his alleged disability and thus failed to trigger a duty for defendant to accommodate that disability.[2] The actual written notice plaintiff alleges he provided to defendant is not contained in the record. However, plaintiff did not testify, and does not specifically argue on appeal, that the written notice he allegedly provided defendant did anything beyond requesting a reader, i.e., it did not specify any handicap necessitating that assistance.

---

[2] On appeal, plaintiff argues that defendant failed to properly post notices regarding how to properly allege a disability and need for accommodation under MCL 37.1210(19) and argues that defendant was thus prohibited from requiring notification under the statute and common-law estoppel principles. However, these issues were not preserved below and plaintiff has failed to provide any citation of the record that would substantiate his position that notice was not posted. See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("a mere statement without authority is insufficient to bring an issue before this Court"). Moreover, it is insufficient for plaintiff "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Further, plaintiff argues that defendant's actions constituted a failure to promote him because of a disability under MCL 37.1202(1)(a), but "[t]his issue was not preserved for appeal because it was not raised in and decided by the trial court." *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). The only allegation in plaintiff's complaint was a failure to accommodate under MCL 37.1210(18), and that was the basis for the trial court's ruling.

The statutory notice of accommodation provision states as follows:

> A person with a disability may allege a violation against a person regarding a failure to accommodate under this article only if the person with a disability notifies the person in writing of the need for accommodation within 182 days after the date the person with a disability knew or reasonably should have known that an accommodation was needed. [MCL 37.1210(18).]

The trial court interpreted the above notice requirement as requiring that, in addition to a written request for an accommodation, the person requesting the accommodation must provide documented evidence of a specific disability to the employer. Therefore, the question before us is what type of written notification "of the need for accommodation" is necessary under MCL 37.1210(18).[3]

Although simply stated, the most appropriate axiom for interpreting this statute is that we "should not abandon the canons of common sense." *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). Additionally, if a statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and enforce the statute as written. *Wickens, supra* at 60.

In this case, nothing in the plain language of the statute provides any guidance on what type of written notification is necessary to reasonably inform the employer what type of accommodation is needed or, more importantly, why the accommodation is needed. However, the PWDCRA places the burden of proof for a

---

[3] This is an issue of first impression; there is no Michigan case law interpreting what type of written notice of a "need for accommodation" is sufficient to satisfy MCL 37.1210(18).

claim of failure to accommodate on the person with a disability. MCL 37.1210(1). In light of that and applying common sense, we conclude that an employee cannot satisfy the written notice requirement of MCL 37.1210(18) by simply stating "I need a reader because I have difficulty with tests." Without at least a brief explanation of why an accommodation is needed, in terms of some physical or mental condition, the employer has no basis on which to make an educated decision whether a "disability" under the PWDCRA, and thus any "duty to accommodate," is at issue. The employer would be left in an unnecessarily precarious position. Having no informed basis on which to respond, an employer could deny an accommodation and be held liable in an action under the PWDCRA for a failure to accommodate—even though the employer had no way of knowing whether the act applied or whether an accommodation was legally necessary.[4]

Our conclusion here is similar to the notice requirement for a claim alleging sexual harassment within a hostile work environment, pursuant to the Civil Rights Act, MCL 37.2101 *et seq*. An employer must have notice of the alleged harassment before liability will attach because, without such notice, the employer has no basis on which to take remedial action. *Sheridan v Forest Hills Pub Schools*, 247 Mich App 611, 621; 637 NW2d 536 (2001). Moreover, "[c]ourts must apply an objective standard of review when considering whether the em-

---

[4] In the worst case, in the absence of a requirement that there be notice of a known disability, a plaintiff could bring a claim of failure to accommodate upon later discovering that he had a disability justifying the accommodation at the time. Further, we note that here the record does not establish that plaintiff's written request even referenced the PWDCRA. However, even if he had done so, but failed to provide any information on the condition he claimed was a disability, our conclusion would be the same.

ployer was provided adequate notice." *Id.* " '[N]otice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a *substantial probability* that sexual harassment was occurring.' " *Id.* at 622, quoting *Chambers v Trettco, Inc*, 463 Mich 297, 319; 614 NW2d 910 (2000) (emphasis in *Sheridan*).

For instance, in *Elezovic v Ford Motor Co*, 259 Mich App 187, 196; 673 NW2d 776 (2003), lv gtd on unrelated issues 470 Mich 892 (2004), this Court ruled that the plaintiff failed to provide adequate notice to her employer of alleged sexual harassment. Although the plaintiff filed various grievances and complaints alleging that a co-worker's actions created a "hostile environment," nothing in the written notices indicated that the alleged sexual harassment had occurred in the workplace. *Id.* Therefore, under the objective standard required by *Chambers, supra* at 319, this Court ruled that the plaintiff failed to establish that the defendant had notice of the alleged sexual harassment. *Elezovic, supra* at 196.

The analogy to the notice requirement of hostile work environment/sexual harassment cases is useful because both notice requirements have the same purpose: to make an employer aware of the situation so that, if necessary, remedial action can be taken. Thus, both types of discrimination cases must be premised on the employer having a certain level of awareness regarding a plaintiff's situation because that enables the employer to know what type of remedial action to take. Under MCL 37.1210(18), the notice of a need for accommodation must allow defendant the opportunity to assess the accommodation request. Without some specified showing of the reason for the requested ac-

commodation, an employer cannot properly determine whether to grant the requested accommodation.

Our conclusion in this regard also disposes of plaintiff's claim that defendant owed him a duty to engage in an interactive process regarding his need for an accommodation. That claim, based on federal law, is premised in part on a showing that "the employer knew about the employee's disability." *Barnes v Northwest Iowa Health Ctr*, 238 F Supp 2d 1053, 1085 (ND Iowa, 2002). For the reasons stated, plaintiff cannot satisfy this requirement here and this claim is without merit.

We affirm.