# STATE OF MICHIGAN

# COURT OF APPEALS

DYAN HAMPTON AYTCH,

Plaintiff-Appellant,

v

SOUTHFIELD BOARD OF EDUCATION,

Defendant-Appellee.

UNPUBLISHED
October 16, 2018

No. 336790
Oakland Circuit Court
LC No. 2015-148792-CD

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's opinion and order granting summary disposition in favor of defendant on plaintiff's employment claims of age discrimination, retaliation and violation of MCL 380.1248 of the Revised School Code, MCL 380.1 *et seq*. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1950, has a Ph.D. in educational psychology, and is fully licensed to practice as a school psychologist. From 2008 to 2009, she was employed by defendant as a school psychologist under a two-year contract. Due to budget reductions and reduced school enrollment, plaintiff was laid off in 2009. In June 2013, plaintiff applied for an opening as a school psychologist with defendant. She was interviewed by Pamela J. Bard and Sharon V. Lewis. Plaintiff was not chosen for the position; instead, Julie Netzky, a younger woman with a master's level degree and fewer years of work experience, was hired. Plaintiff filed a complaint with the Michigan Department of Civil Rights (MDCR), alleging age discrimination.

In October 2013, plaintiff applied for another open school psychologist position with defendant. She was interviewed by Bard, Dr. Sandra Screen, Ph.D. and Rita Teague[1]. Plaintiff again was not hired. The position was offered to and accepted by Aja C. Temple, a 35-year old female with a Ph.D. who lacked full licensure.

---

[1] Teague, the administrator for one of the schools that the successful applicant would serve, was present at the beginning of plaintiff's interview but very early during the proceedings had to excuse herself because of an emergency at the school.

-1-

In both instances, the interviews for all candidates were conducted using the same set of 12 questions, developed by Bard. Bard did not provide interviewers with model answers. Bard testified at her deposition that the interviewers were instructed to "write down as much information from that response as possible" or "what they observed [during] the answer." The interviewers assigned each candidate's answer a numerical score from zero to 8.3.[2] The interviewers did not discuss their respective individual scoring of each candidate's responses to the questions posed until after the scores had been assigned and tallied, so that each interviewer would not be influenced by another's scoring decisions. After the scoring and tallying was completed, the interviewers then discussed the applicants and the scoring, in an effort to reach a consensus on the hiring decision. Bard testified that a score of 85 or below would be the "cutoff point" for any candidate to be considered as a viable hire.

In the first interview with plaintiff, Bard assigned plaintiff a score of 70, with Lewis giving plaintiff a score of 60.8.[3] Bard testified that plaintiff's lower scores reflected a lack of "depth" in "content" or the omission of integral information regarding the role of the psychologist in various proceedings. For example, Bard stated that plaintiff's response regarding a Medicaid billing question lacked a "more in-depth understanding of Medicaid billing" other than plaintiff's statement that she had "trained for it." Bard also testified that she had issues with plaintiff's demeanor, stating that plaintiff displayed "poor body language, posture and poor eye-contact." Bard testified that she did not feel that plaintiff was the best candidate for the position, and that plaintiff's possession of a doctorate led Bard to expect that she "would have a broader range of knowledge and more depth to the knowledge base and that was not presented at the interview." Bard testified that she preferred Netzky because her answers provided

> more depth and content, she was more engaging, she had eye contact, she had more flavors in the interviewing process. She was [sic] the expectations of the department and knowing the atmosphere of both buildings she had the characteristics that would be more in line with what the expectations were from the building administrators.

Lewis testified at her deposition that she would not necessarily write down or document what she construed to be basic knowledge or answers given during an interview. Rather, Lewis's focus was on documenting responses that she considered unique or subject to follow up inquiries. Lewis further stated that she did not perceive a "sense of engagement" by plaintiff during the interview, and that she found that plaintiff "wasn't really aware of the recent changes and requirements" concerning Medicaid billing. The ages of the various candidates were not the

---

[2] Screen testified at her deposition that the highest score possible for each question at these particular interviews was 8.3. A candidate who received perfect scores on all 12 questions would receive 99.6 points, which was apparently rounded up to 100.

[3] By contrast, Bard assigned Netzky a score of 83, and Lewis assigned her a score of 100. Additionally, Screen assigned Netzky a score of 98.8, and another interviewer by the name of Baker assigned her a score of 96.3. On average, therefore, Netzky received an overall score of 94.5 and plaintiff received an overall score of 65.4.

subject of any questions and were not discussed at the interview. Lewis and Bard are approximately plaintiff's age.

At plaintiff's second interview, she received a score of 69 points from Bard and 76.3 points from Screen.[4] Bard testified that she again found plaintiff's answers to lack depth and content compared to other candidates' answers. She also expressed surprise that plaintiff's interview performance did not improve from that of the first interview, given that the presentation of the same questions should have been to plaintiff's advantage and should have given her "some insight on how to improve her interviewing skills." Similarly, Screen characterized plaintiff's responses as "vague" and testified that plaintiff did not always provide detailed or sufficiently responsive answers. Screen is also approximately plaintiff's age.

After plaintiff was not hired for the second position, she filed suit in the trial court, alleging violation of the Revised School Code, age discrimination, retaliation for her filing of a complaint with the MDCR, and intentional infliction of emotional distress (IIED). Plaintiff later voluntarily dismissed her IIED claim. After discovery, defendant moved for summary disposition under MCR 2.116(C)(10), asserting that plaintiff's claim for violation of the Revised School Code failed because she was not a "teacher" as defined by the relevant statutory provision, that plaintiff had failed to establish a prima facie case for retaliation, and that defendant had provided legitimate, nondiscriminatory reasons for not hiring plaintiff, which reasons plaintiff could not establish were pretextual.

The trial court granted defendant's motion. With regard to the age discrimination claim, the trial court stated that it had reviewed the evidence consisting of the interview questions and notes, which confirmed that plaintiff "was ranked last out of all the interview candidates" and, therefore, "was not offered the positions." The trial court held that defendant had provided a legitimate, nondiscriminatory reason for not hiring plaintiff and that plaintiff had not shown sufficient disputed facts regarding whether the stated reason was merely a pretext for age discrimination. The trial court also found no causal connection between plaintiff's MDCR complaint and defendant's decision not to hire her following the second interview, noting that Screen did not have knowledge of the complaint at the time of the interview. Finally, the trial court held that, even assuming that plaintiff was a "teacher" under the Revised School Code, she was subject to a personnel decision based on her effectiveness and performance, and had failed to demonstrate a genuine issue of material fact regarding a violation of the Code.

This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the grant or denial of a motion for summary disposition. A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion brought under this subsection, we consider affidavits,

---

[4] By contrast, Bard assigned Temple a score of 96, and Screen and Teague each assigned her a score of 100, for an average score of 98.6, as compared with plaintiff's average score of 72.6.

-3-

pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

Similarly, statutory interpretation is a question of law that we review de novo. [*Bageris v Brandon Twp*, 264 Mich App 156, 161-162; 691 NW2d 459 (2004) (citations and quotation marks omitted).]

## III. AGE DISCRIMINATION

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendant on her claim for age discrimination because she offered sufficient evidence to create a genuine issue of material fact regarding whether defendant's proffered reasons for not hiring her were pretextual. We disagree.

MCL 37.2202(1)(a) provides:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Discrimination may be proven by either direct or circumstantial evidence. *Hazle v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001). Direct evidence is defined as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. at 462 (citations omitted). Plaintiff admitted in the trial court that direct evidence to support her claim of age discrimination does not exist.

When direct evidence of discrimination does not exist, a plaintiff "must then proceed through the familiar steps" of *McDonnell Douglas Corp v Green*, 411 US 792, 802-803; 93 S Ct 1817; 36 L Ed 2d 668 (1973), to avoid summary disposition. *Hazle*, 464 Mich at 462. Specifically:

The *McDonnell Douglas* approach allows a plaintiff "to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination." Although originally created for use in race discrimination cases, we have adopted the *McDonnell Douglas* approach for use in age and gender discrimination cases brought under the Michigan Civil Rights Act as well. [*Hazle*, 464 Mich at 462-463 (citations omitted).]

In other words, "a plaintiff must first offer a 'prima facie case' of discrimination." *Id*. at 463. To establish a prima facie case of discrimination, a plaintiff is "required to present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving

-4-

rise to an inference of unlawful discrimination." *Id*. (citations omitted). If a plaintiff successfully establishes a prima facie case of discrimination, then "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action taken." *Major v Village of Newberry*, 316 Mich App 527, 541; 892 NW2d 402 (2016). If defendant does so, "[t]o prevail on the claim, a plaintiff must then present evidence that the explanation provided by his or her employer constituted a pretext for discrimination." *Id*. at 542 (citations and quotation marks omitted). Specifically:

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Id*. at 542 (citation omitted).]

Whether relying on direct or indirect evidence to establish age discrimination, "a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." *Id*. (citation omitted).

In making out a prima facie case for age discrimination in hiring, a plaintiff must do more than demonstrate that she was qualified for the position but that younger candidates were chosen. *Hazle*, 464 Mich at 470. Rather:

> While a plaintiff is not required to show circumstances giving rise to an inference of discrimination in any one specific manner, the plaintiff's burden of production remains to present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. In short, a plaintiff must offer evidence showing something more than an isolated decision to reject a[n] . . . applicant [that falls within a protected group]. As a matter of law, an inference of unlawful discrimination does not arise merely because an employer has chosen between two qualified candidates. Under such a scenario, an equally-if not more-reasonable inference would be that the employer simply selected the candidate that it believed to be most qualified for the position. [*Id*. at 470-471 (citations and quotation marks omitted).]

If a plaintiff does meet this burden, the defendant is afforded the opportunity to rebut the presumption by articulating a legitimate, nondiscriminatory reason for hiring individuals younger than the plaintiff. *Town v Mich Bell Tel Co*, 455 Mich 688, 695-696; 568 NW2d 64 (1997). If the defendant does articulate a legitimate and nondiscriminatory reason for its decision, the presumption of discrimination "drops away," *Hazle*, 464 Mich at 465, unless the plaintiff can establish that the reason was a pretext, *Major*, 316 Mich App at 542.

On appeal, defendant does not contend that plaintiff failed to establish a prima facie case of age discrimination. The trial court did not hold that plaintiff established a prima facie case of age discrimination; rather, it "assum[ed] without deciding" that a prima facie case existed. We therefore will also assume, for purposes of our analysis, that plaintiff could establish a prima facie case of age discrimination.

Defendant presented deposition testimony from the various interviewers, Bard, Lewis and Screen, indicating that defendant's reasons for not rehiring plaintiff were that Netzky and Temple were more enthusiastic regarding the positions and demonstrated demeanors that were more suited to the anticipated interactions between school psychologists and students, their parents, and other staff. Additionally, Netzky and Temple provided superior responses to the interview questions posed that demonstrated a greater familiarity with the applicable law relevant to the provision of psychological services to special education students in a school setting.

Bard testified that when interviewing a candidate for the position of school psychologist, her primary concern was to find someone "aware of the law, basically – Special Education is the law and any deviation from that would cause challenges for the district as a whole, so I'm looking for someone who knows the law, the IEP [individualized education plan] process, and all the characteristics that would – that a school psychologist would have." Bard explained that, given her role as defendant's Director of Special Education and her knowledge of the subject area, she maintained high standards regarding the interview responses resulting in her "scoring" of the responses to "be more critical."

In reviewing the scores assigned to specific questions and comparing plaintiff's answers to Netzky's, Bard explained that plaintiff's lower scores reflected a lack of "depth" in "content" or the omission of integral information regarding the role of the psychologist in various proceedings, as reflected for example in plaintiff's cursory response to a question regarding Medicaid billing. Bard admitted that the interviewing process involved a fair degree of subjectivity rather than a mechanical application of a scoring process; for example, she stated that she favored Netzky because her answers provided "more depth and content, she was more engaging, she had eye contact, she had more flavors in the interviewing process. She was [sic] the expectations of the department and knowing the atmosphere of both buildings she had the characteristics that would be more in line with what the expectations were from the building administrators."

Lewis also testified that subjective factors informed her scoring of interviewing candidates. Lewis indicated given the composition of students in her school, in selecting a psychologist she was looking for "someone that would be engaging. Of course they have to have the professional qualifications, they have to understand how to deal with children like that, so a person who would be quite engaging with the students would make that person's job easier I think as well as being able to really understand the child better. . . ." Specifically, Lewis indicated the importance of examining and considering a candidate's demeanor:

> I think if they come in with an enthusiastic view of what they're applying for, I think that how they answer questions. If their questions kind of – not really touch upon the humanistic side of student behavior or of what they do within their job that affects students or that works with students. I think that makes a big difference.

Lewis was not familiar with plaintiff before the interview and lacked knowledge of plaintiff's age. Lewis stated that she did not perceive a "sense of engagement" by plaintiff during the interview. Lewis also indicated a qualitative difference between the responses of plaintiff and Netzky, such as, again, their respective responses to the Medicaid billing question.

Bard's testimony regarding plaintiff's second interview was similar to that regarding the first. In her testimony, Screen described her method of determining the number of points to assign to responses as involving the completeness of the answer received and the amount of detail provided. Screen characterized plaintiff's responses as "vague." Specifically, Screen explained that while plaintiff "spoke a lot," she did not provide detailed answers or failed to provide a sufficiently responsive answer. Screen denied that any conversations occurred pertaining to the age of plaintiff or other applicants.

As the trial court recognized, defendant provided legitimate, nondiscriminatory reasons for its selection of Netzky and Temple for the school psychologist positions. Simply put, the individuals with the highest interview scores were chosen for the positions. The burden thus shifted back to plaintiff to show that defendant's reasons were mere pretext.

As the trial court also noted, a defendant's proffered nondiscriminatory reason should be more closely scrutinized when it is based on subjective factors. See *Riggs v AirTran Airways, Inc*, 497 F3d 1108, 1120 (CA 10, 2007); *Grano v Dep't of Dev of City of Columbus*, 699 F 2d 836, 837 (CA 6, 1983).[5] However, "the existence of subjective criteria alone is not considered evidence of pretext; rather, the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards." *Riggs*, 497 F3d at 1120. Plaintiff did not provide any other such evidence. As the trial court noted, all of the interviewers were approximately plaintiff's age. Age was never discussed at the interview, and none of the interview questions appear designed to reveal information about a candidates' age. Plaintiff's argument rests on the mere fact that she is older than the candidates ultimately chosen and her own subjective belief that she was more qualified for the position. Plaintiff's argument therefore concerns the "soundness" of defendant's election to "select[]" or hire "one competent employee over another, as opposed to the veracity of [defendant's] explanation" of the elections made. *Town*, 455 Mich at 704. "[A] plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id*. (citation omitted). To hold otherwise would be to have a review court act as a " ' super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Riggs*, 497 F3d at 1119 (quotation marks and citation omitted). We decline to do so.

Plaintiff concedes that there was no overt or direct evidence of age discrimination. All of the candidates, including plaintiff, were asked the same questions, which were related to the qualifications and requirements of the school psychologist position and duties. While plaintiff criticizes the subjectivity of the scoring of responses, subjectivity alone is not evidence of discrimination. The interviewers explained how and why they assigned points to the responses during the interview process, with the person receiving the highest score also receiving the job

---

[5] While decisions of lower federal courts are not binding precedent for this Court, they may be considered as persuasive authority. *Sharp v City of Lansing*, 464 Mich 792, 802-803; 629 NW2d 873 (2001).

offer. Because defendant was able to provide legitimate, nondiscriminatory reasons for its decision to hire Netzky and Temple rather than plaintiff for the school psychologist positions and plaintiff provided no evidence of pretext, the trial court did not err by granting summary disposition in favor of defendant on plaintiff's age discrimination claim. *Bageris v Brandon Twp*, 264 Mich App at 161-162.

## IV. RETALIATION

Plaintiff also argues that defendant's decision to not hire her for the second position was influenced by and in retaliation for her filing of a complaint with the MDCR after her rejection by defendant for the first position. We disagree.

The CRA prohibits an employer from retaliating against an employee for exercising his or her rights under the CRA:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701(a).]

As explained by this Court:

The CRA prohibits persons from retaliating or discriminating against a person because the person has opposed a violation of [the CRA], or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the CRA]. MCL 37.2701(a). To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. [*Major*, 316 Mich App at 552-553 (case citations and quotation marks omitted).]

To establish causation, the plaintiff must show that his participation in activity protected by the CRA was a significant factor in the employer's adverse employment action, not just that there was a causal link between the two. A causal connection can be established through circumstantial evidence, such as close temporal proximity between the protected activity and adverse actions, as long as the evidence would enable a reasonable fact-finder to infer that an action had a discriminatory or retaliatory basis. [*Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004) (citations and quotation marks omitted).]

Plaintiff is unable to demonstrate that defendant's decision to not hire her for the second school psychologist position was in relation for her filing an MDCR complaint. While Bard was

aware of plaintiff's complaint to the MDCR, Screen denied any knowledge of the complaint or the investigation until after a hiring decision with respect to the second position had been made.

Plaintiff offers no direct evidence that the MDCR complaint influenced defendant's decision regarding the second position, but merely relies on the fact that she filed the MDCR complaint before the second interview and speculates that Bard may have influenced Screen. But Screen testified that she independently scored candidates with no input from Bard, and plaintiff provides no contradictory evidence. As stated, both interviewers scored plaintiff below the cutoff point, regardless of their awareness of the MDCR complaint. Simply put, plaintiff has failed to demonstrate a genuine issue of material fact regarding whether her complaint with the MDCR was a "significant factor" in the decision to not hire plaintiff for the second position. "[A] temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action. Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003).

## IV. VIOLATION OF THE REVISED SCHOOL CODE

Finally, plaintiff argues that defendant's hiring decision violated the Revised School Code, specifically MCL 380.1248, because it did not consider plaintiff's prior performance evaluation, conducted when she was employed by defendant. Plaintiff further contends that defendant's interview process did not meet the statutory criteria of being "fair and transparent," MCL 380.1249, because the rating system used by the individual interviewers was completely subjective. We hold that plaintiff was not entitled to the protection that the Revised School Code grants to teachers and that the trial court therefore appropriately granted summary disposition in favor of defendant on this claim.

MCL 380.1248 states, in relevant part:

(1) For teachers, as defined in section 1 of article I of 1937 (Ex Sess) PA 4, MCL 38.71, all of the following apply to policies regarding personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position, when conducting a recall from a staffing or program reduction or any other personnel determination resulting in the elimination of a position, or in hiring after a staffing or program reduction or any other personnel determination resulting in the elimination of a position by a school district or intermediate school district:

(a) Subject to subdivision (c), the board of a school district or intermediate school district shall not adopt, implement, maintain, or comply with a policy that provides that length of service or tenure status is the primary or determining factor in personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position, when conducting a recall from a staffing or program reduction or any other personnel determination resulting in the elimination of a position, or in hiring after a staffing

-9-

or program reduction or any other personnel determination resulting in the elimination of a position.

(b) Subject to subdivision (c), the board of a school district or intermediate school district shall ensure that the school district or intermediate school district adopts, implements, maintains, and complies with a policy that provides that all personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position, when conducting a recall from a staffing or program reduction or any other personnel determination resulting in the elimination of a position, or in hiring after a staffing or program reduction or any other personnel determination resulting in the elimination of a position, are based on retaining effective teachers. The policy shall ensure that a teacher who has been rated as ineffective under the performance evaluation system under section 12491 is not given any preference that would result in that teacher being retained over a teacher who is evaluated as minimally effective, effective, or highly effective under the performance evaluation system under section 1249. Effectiveness shall be measured by the performance evaluation system under section 1249, and the personnel decisions shall be made based on the following factors:

(*i*) Individual performance shall be the majority factor in making the decision, and shall consist of but is not limited to all of the following:

(A) Evidence of student growth, which shall be the predominant factor in assessing an employee's individual performance.

(B) The teacher's demonstrated pedagogical skills, including at least a special determination concerning the teacher's knowledge of his or her subject area and the ability to impart that knowledge through planning, delivering rigorous content, checking for and building higher-level understanding, differentiating, and managing a classroom; and consistent preparation to maximize instructional time.

(C) The teacher's management of the classroom, manner and efficacy of disciplining pupils, rapport with parents and other teachers, and ability to withstand the strain of teaching.

(D) The teacher's attendance and disciplinary record, if any.

(*ii*) Significant, relevant accomplishments and contributions. This factor shall be based on whether the individual contributes to the overall performance of the school by making clear, significant, relevant contributions above the normal expectations for an individual in his or her peer group and having demonstrated a record of exceptional performance.

(*iii*) Relevant special training. This factor shall be based on completion of relevant training other than the professional development or continuing education

that is required by the employer or by state law, and integration of that training into instruction in a meaningful way.

(c) Except as otherwise provided in this subdivision, length of service or tenure status shall not be a factor in a personnel decision described in subdivision (a) or (b). However, if that personnel decision involves 2 or more employees and all other factors distinguishing those employees from each other are equal, then length of service or tenure status may be considered as a tiebreaker.

(2) If a collective bargaining agreement is in effect for employees of a school district or intermediate school district as of the effective date of this section and if that collective bargaining agreement prevents compliance with subsection (1), then subsection (1) does not apply to that school district or intermediate school district until after the expiration of that collective bargaining agreement.

(3) If a teacher brings an action against a school district or intermediate school district based on this section, the teacher's sole and exclusive remedy shall be an order of reinstatement commencing 30 days after a decision by a court of competent jurisdiction. The remedy in an action brought by a teacher based on this section shall not include lost wages, lost benefits, or any other economic damages.

MCL 380.1249(1) provides that "the board of a school district or intermediate school district or board of directors of a public school academy shall adopt and implement for all teachers and school administrators a rigorous, transparent, and fair performance evaluation process. . . ." Our review of the relevant statutory language compels the conclusion that plaintiff was not a "teacher" under the Code. MCL 38.71(1) defines a " 'teacher' as used in this act [to] mean[] a certificated individual employed for a full school year by any board of education or controlling board." The term "certificated" is statutorily defined to mean "holding a valid teaching certificate, as defined by the state board of education." Plaintiff was a licensed school psychologist, not a certified teacher. Further, the employment of licensed school psychologists falls within MCL 380.1251, which states:

(1) The board of a school district may establish and employ personnel necessary to provide an adequate school psychological service. School psychological service is a related nonclassroom function and shall be operated under rules promulgated by the state board, which shall establish the educational and experience requirements for, and certify as qualified and issue certificates to, the personnel for the services.

(2) The state board may require reports and information from participating school districts.

Notably, school administrators "involved in instructional matters" are specifically subject to the same evaluation process as teachers, under MCL 380.1249b. "When the Legislature enacts laws, it is presumed to know the rules of statutory construction and therefore its use or omission of language is generally presumed to be intentional." *Bronson Methodist Hosp v Allstate Ins Co,*

286 Mich App 219, 228; 779 NW2d 304 (2009) (citation omitted). The Legislature did not provide that licensed school psychologists were to receive the protections of MCL 380.1248, and we may not expand upon its unambiguous statutory language. *Bageris*, 264 Mich App at 162.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel