*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHERYL COX and FRANK COX,

        Plaintiffs-Appellants,

v

AMERICA MULTI-CINEMA, INC.,

        Defendant-Appellee.

UNPUBLISHED
November 10, 2022

No. 357588
Oakland Circuit Court
LC No. 2020-180668-NO

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On December 4, 2018, plaintiff Cheryl Cox (Cheryl) purchased a ticket at a movie theater owned by defendant. She was using a wheeled mobility scooter as she entered the theater auditorium. Cheryl testified at her deposition that she was fully blind in her right eye and had 50% vision in her left eye, but did not tell any of the theater staff about her vision problems. After Cheryl entered the empty auditorium, she decided to turn around and exit the auditorium to ask staff for assistance with parking her mobility scooter. She admitted at her deposition that she could have walked out of the auditorium to get help, but chose to remain in her mobility scooter. When Cheryl attempted to turn around, she accidentally backed the mobility scooter down some steps, resulting in her falling down and her mobility scooter landing on top of her, causing injury.

Plaintiffs filed a complaint against defendant alleging claims of negligence and loss of consortium. Plaintiffs claimed that defendant had breached its duty to Cheryl by having poor theater design, low lighting, and inadequate staff training, and by failing to properly mark hazards and handicapped seating sections. Defendant denied that it breached a duty owed to Cheryl and moved for summary disposition, arguing that plaintiffs' claims were barred by the open and obvious doctrine because steps—especially the steps at issue, which were lined with white handrails, lights, aluminum edges, and yellow and black stripes—are an open and obvious

condition that do not present unreasonable danger. Defendant also argued that Cheryl's vision problems did not preclude application of the open and obvious doctrine.

Plaintiffs responded by arguing for the first time that defendant had negligently violated the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, when designing its theater auditorium. Plaintiffs also claimed that special aspects existed that negated the application of the open and obvious doctrine.

After a hearing on defendant's motion, the trial court issued a written opinion in which it concluded, as a matter of law, that the allegedly hazardous condition was open and obvious and that there were no attendant special aspects. As for the ADA argument, the trial court determined that plaintiffs had failed to timely raise a claim for violation of the ADA in their complaint. Finally, the trial court determined that plaintiffs' loss of consortium claim failed because it was derivative of the failed premises liability claim.

This appeal followed.

## II. STANDARD OF REVIEW

This Court "reviews de novo a trial court's ruling on a motion for summary disposition." *Zarzyski v Nigrelli*, 337 Mich App 735, 740; 976 NW2d 916 (2021). A party is entitled to summary disposition under MCR 2.116(C)(10) when the evidence does not present a genuine issue of material fact. *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020). "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2021) (quotation marks and citation omitted). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Jewett*, 332 Mich App at 470 (quotation marks and citation omitted). This includes pleadings, affidavits, admissions, and depositions, along with other evidence submitted by the parties. *Walega v Walega*, 312 Mich App 259, 265-266; 877 NW2d 910 (2015). This Court reviews issues of law de novo. *Kocher v Dep't of Treasury*, 241 Mich App 378, 380; 615 NW2d 767 (2000).

## III. ANALYSIS

Plaintiffs argue that the trial court erred by granting defendant's motion for summary disposition. We disagree.

In premises liability cases, "a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Mouzon v Achievable Visions*, 308 Mich App 415, 418; 864 NW2d 606 (2014) (quotation marks and citation omitted). "Questions regarding whether a duty exists are for the court to decide as a matter of law." *Id*. (quotation marks and citation omitted). "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004). There can be no tort liability if the defendant did not owe a duty to the plaintiff. *Id*.

In general, "a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Finazzo v Fire Equip Co*, 323 Mich App 620, 626; 918 NW2d 200 (2018) (citation omitted). An invitee is someone who enters the "property of another for business purposes." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). "But this duty does not extend to having to remove open and obvious dangers absent the presence of special aspects." *Finazzo*, 323 Mich App at 626. "A condition of the land is open and obvious when it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. (quotation marks and citation omitted). "Special aspects exist and impose a duty of care to protect those lawfully on the premises even if a hazard is open and obvious when the condition is effectively unavoidable or imposes an unreasonably high risk of severe harm." *Id*. at 627 (citation omitted).

Steps are generally considered an open and obvious condition. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 614; 537 NW2d 185 (1995) (citation omitted). "[B]ecause steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety." *Id*. "Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons." *Id*. at 615 (quotation marks and citation omitted). A landowner does not have to make his land foolproof to prevent people from harming themselves. *Id*. at 616-617. Generally, open and obvious dangers do not have to be removed because the open and obvious doctrine will cut off liability. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001) (citation omitted). Steps and differing floor levels are not ordinarily actionable unless conditions exist that make them unreasonably dangerous. *Bertrand*, 449 Mich at 614.

Plaintiffs acknowledge that steps are generally considered an open and obvious condition on land, but argue that these particular steps possessed special aspects that precluded the application of the doctrine. Plaintiffs also argue that the trial court should have considered Cheryl's subjective vantage point in considering whether the steps were open and obvious. Additionally, plaintiffs argue that the trial court should have considered their claim for ADA violations. We disagree with each argument.

## A. SPECIAL ASPECTS

Plaintiffs argue that the steps presented an unreasonable risk of harm because of attendant special aspects. See *Finazzo*, 323 Mich App at 626 (stating that attendant special aspects can negate the open and obvious doctrine defense). We disagree. There are two ways for an open and obvious danger to possess special aspects which negate the application of the open and obvious doctrine: (1) the danger is unreasonable, or (2) the danger is effectively unavoidable. *Hoffner v Lanctoe*, 492 Mich 450, 463; 821 NW2d 88 (2012).

## 1. UNREASONABLY DANGEROUS

For a condition to pose an unreasonable risk of harm, it must give rise to a uniquely high risk of severe harm if the risk is not avoided. *Lugo*, 464 Mich at 518-519. Consider the following:

It would, for example, be inappropriate to conclude in a retrospective fashion that merely because a particular plaintiff, in fact, suffered harm or even severe harm, that the condition at issue in a case posed a uniquely high risk of severe harm. This is because a plaintiff may suffer a more or less severe injury because of idiosyncratic reasons, such as having a particular susceptibility to injury or engaging in unforeseeable conduct, that are immaterial to whether an open and obvious danger is nevertheless unreasonably dangerous . . . . [T]his opinion does not allow the imposition of liability merely because a particular open and obvious condition has some potential for severe harm. [*Id*. at 518 n 2.]

The appropriate inquiry is whether there are truly special aspects which make the risk created by the condition different from risks presented by typical open and obvious conditions. *Id*. at 517-518. Generally, a premises owner need not protect an invitee from open and obvious dangers unless there are special aspects which make even an open and obvious condition unreasonably dangerous. *Id*. at 517. When evaluating open and obvious dangers, the crucial question is whether the evidence "creates a genuine issue of material fact regarding whether there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm." *Id*. at 517. In other words, the question is whether the "special aspect" of the open and obvious condition should result in liability for the defendant or whether the open and obvious character of the condition should bar liability. *Id*. at 517-518. "It bears repeating that exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited*, extreme situations." *Hoffner*, 492 Mich at 472.

The Court in *Lugo* upheld the trial court's grant of the defendant's summary disposition motion, finding that reasonable minds could not differ on the conclusion that a pothole in a parking lot was an open and obvious condition without special aspects and that an ordinary, prudent person would be able to avoid it. *Lugo*, 464 Mich at 514-526. Importantly, the Court in *Lugo* concluded that the debris covering the pothole was insufficient to bar the application of the open and obvious doctrine because the plaintiff claimed that the reason she did not see the pothole was that she was looking elsewhere, not because the debris shielded it from her view. *Id*. at 521. In contrast, the *Lugo* Court explained that an unguarded, 30-foot-deep pit in the middle of a parking lot presented a substantial risk of death or severe injury and was therefore unreasonably dangerous because of this special aspect. *Id*. at 518. See also *Millikin v Walton Manor Mobile Home Park, Inc*, 234 Mich App 490, 491-492, 499; 595 NW2d 152 (1999) (holding that a low-running utility wire that caused a woman to trip did not create a genuine issue of material fact as to whether an unreasonable risk of harm existed because there was nothing unusual about the wire nor facts presented to support the assertion that the wire posed an unreasonable risk of harm); *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 144; 565 NW2d 383 (1997) (holding that the risk of being hit by a hockey puck in a hockey rink was not unreasonable, despite the rink's poor lighting).

The special aspects that plaintiffs claim made the steps an unreasonable risk of harm are the theater's alleged design flaws, dark lighting, lack of signage for parking a mobility scooter, and lack of clear markings on the steps. We disagree that any of these aspects rendered the risk posed by the steps unreasonably dangerous. To show that the risk of harm posed by the steps was unreasonably dangerous, plaintiffs were required to show something above and beyond the mere risk of falling that all steps present. See *Lugo*, 464 Mich at 518.

-4-

Plaintiffs also contend that the theater failed to meet ADA regulations and that this failure caused or contributed to Cheryl's fall, relying on their expert's affidavit in which he opined that Cheryl most likely slipped off the edge because the walkway was narrow and because the guardrail between the steps and the adjacent ramp did not extend the ADA-required 12 inches past the top of the steps.[1]  However, even when statutory violations exist, a statutory violation does not automatically preclude the application of the open and obvious doctrine. *Wilson v BRK, Inc*, 328 Mich App 505, 519-520; 938 NW2d 761 (2019).  Plaintiffs have asserted that Cheryl fell because of design defects, but plaintiffs have failed to explain how these alleged defects created an unreasonable risk of harm; despite the claimed narrowness of the steps, the risk posed by the steps remained the risk of falling.  See *Hoffner*, 492 Mich at 472 (requiring the risk of harm presented by an open and obvious condition to be unreasonable to avoid application of the doctrine).  Moreover, nothing in Cheryl's testimony indicates that the presence of an ADA-compliant guardrail or step-width would have prevented her fall.  In light of the irrelevance of any statutory defect and failure of plaintiffs to substantiate their conclusion that this alleged defect created an unreasonable risk of severe harm, we conclude that reasonable minds cannot differ that these alleged defects did not make the steps unreasonably dangerous.

Plaintiffs also argue that the lighting of the steps inside the auditorium was inadequate and that this is a special aspect that negates the application of the open and obvious doctrine.  Plaintiff has failed to establish a material issue of fact on this issue.  The undisputed evidence presented to the trial court shows that the steps were lighted and had reflective aluminum edges along with white guardrails and colorful tape marking the edges of the steps.  Moreover, even assuming that the lighting was inadequate, inadequate lighting can be a noticeable and predictable condition that does not make an otherwise open and obvious risk of harm unreasonable. *Singerman*, 455 Mich at 141, 144.  In this case, Cheryl was aware that it was dark in the auditorium but decided to proceed into the auditorium anyway.  Cheryl had been to the theater before and either knew or should have known that there were steps in the auditorium.  Furthermore, movie theater auditoriums are generally dark.  As in *Singerman*, we conclude that reasonable minds cannot differ in finding that the lighting in the theater auditorium did not render the risk presented by steps unreasonable.

Plaintiffs also argue that there was a lack of handicap signage in the theater auditorium; however, assuming this is true, plaintiffs have not explained how a lack of such signage made the steps unreasonably dangerous and that this lack of signage presented an unreasonable risk of harm to Cheryl.  Plaintiffs argue that the lack of signs caused Cheryl to leave the auditorium to seek assistance, and that doing so is what led to her fall.  This argument goes to causation, not to the application of the open and obvious doctrine.  Plaintiffs have not demonstrated that the lack of handicap signage made the steps unreasonably dangerous.

Plaintiffs also argue that the tape markings on the steps were confusing and inadequate. However, plaintiffs do not explain how the tape marking the entrance to the steps rendered the risk

---

[1] The claimed "narrowness" of the steps relates to the 33.5-inch width of the steps (as opposed to the ADA-required 36 inches) between the guardrails on either side of the steps.  The steps themselves each had an extended "landing" area before reaching the next step.

of harm unreasonable. Photographs of the steps provided to the trial court shows that the area surrounding the entrance to the steps was marked with reflective tape, while the actual steps were marked with reflective aluminum edges and floor lighting and surrounded by a white guardrail. Plaintiffs have not demonstrated that the tape somehow obscured the steps or otherwise rendered them unreasonably dangerous, even if Cheryl was confused by the meaning of the tape.

As stated, steps, even steps in a dark room, do not ordinarily present an unreasonable risk of severe harm because they are a common occurrence encountered every day and an average person of ordinary intelligence would discover them upon casual inspection. *Bertrand*, 449 Mich at 614-616. In this case, the steps in question were marked with black and yellow tape, lined with reflective aluminum edges, surrounded by white railings, and lit at each step with floor lights. Plaintiffs have failed to demonstrate that these steps were unreasonably dangerous. See *Hoffner*, 492 Mich at 472; *Bertrand*, 449 Mich at 614-616.

## 2. EFFECTIVELY UNAVOIDABLE

Plaintiffs also argue that the steps were effectively unavoidable. We disagree. A means of showing that a special aspect existed that negates the application of the open and obvious doctrine is to demonstrate that the condition was effectively unavoidable. *Hoffner*, 492 Mich at 463. "An 'effectively unavoidable' hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances." *Id*. at 472. "[N]either a common condition nor an avoidable condition is uniquely dangerous." *Id*.

Steps are a common, everyday condition; they are not uniquely dangerous. *Hoffner*, 492 Mich at 472; *Bertrand*, 449 Mich at 616. "[A]n 'effectively unavoidable' condition must be an inherently dangerous hazard that a person is inescapably required to confront under the circumstances." *Hoffner*, 492 Mich at 463, 465. A business invitee's right to enter a business as a customer does not render a condition within that business effectively unavoidable. See *id*.

In this case, Cheryl testified that she saw an exit sign, indicating that there was another way to leave the auditorium. Additionally, Cheryl admitted that she could have walked out of the theater to get help, therefore avoiding turning around in her mobility scooter. Moreover, Cheryl was not required to confront the alleged hazard presented by the steps at all; she could have chosen not to see a movie in that particular theater or asked a staff member to provide assistance before entering the theater auditorium (that she had visited before). There was no genuine issue of material fact as to whether the steps were effectively unavoidable, and the trial court did not err by concluding that the steps were open and obvious.

## B. OBJECTIVE STANDARD

Plaintiffs also argue that the trial court erred by not considering Cheryl's vantage point, i.e., her subjective perspective, when determining whether the steps were open and obvious. We disagree.

Whether a condition is open and obvious is determined by an objective standard. *Hoffner*, 492 Mich at 461. "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an *objective standard*, calling for an examination of the objective nature of the

condition of the premises . . . ." *Id*. (quotation marks and citations omitted). More recently, this Court held that the "required analysis involves examination of the objective nature of the condition of the premises." *Wilson*, 328 Mich App at 513 n 3.

Here, plaintiffs claim that Cheryl did not see the steps because of her vision issues, not because they could not be seen by an average person of ordinary intelligence. Although Cheryl's subjective characteristics may well have impaired her ability to see the steps, the law is clear that openness and obviousness is to be determined by reference to an objective standard, and the trial court was not at liberty to disregard that standard. *Hoffner*, 492 Mich at 461.

## C. ADA VIOLATION

Plaintiffs also argue that the trial court erred by failing to consider plaintiffs' arguments concerning alleged violations of the ADA. We disagree.

Michigan is a "notice-pleading jurisdiction with a relatively low bar for the sufficiency of initial allegations . . . ." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). The purpose of a pleading in Michigan is to "give notice of the nature of the claim or defense sufficient to permit the opposing party to take a responsive position." *Id*. at 230 (quotation marks and citation omitted).

In their complaint, plaintiffs alleged that Cheryl fell down the steps in part due to the "poor design of the area for scooters." Plaintiffs argue that this was sufficient under Michigan's notice-pleading rule to notify defendant of plaintiffs' claim that defendants had violated the ADA. We disagree. Plaintiffs included their poor design allegation as part of their premises liability claim. Accordingly, the nature of the argument was that defendant was negligent in its design of the theater and that this design created an unsafe condition. Negligent design is not synonymous with ADA violations; simply alleging that an area was negligently designed does not by itself indicate a claim there was an ADA violation. Plaintiffs did not refer to the ADA in their complaint, either expressly or by implication, in a manner sufficient to put defendant on notice of such a claim. *Id*. Defendant was not given notice of an ADA claim, and therefore, did not have a chance in the trial court to investigate the claim until after plaintiffs' response to defendant's motion for summary disposition was filed.

In any event, as discussed, the open and obvious doctrine may still be applied when a statutory violation is present; indeed, violation of a statute is not relevant to the application of the doctrine. *Wilson*, 328 Mich App at 519-520. Plaintiffs did not allege a separate claim for violation of the ADA, but argued that the alleged ADA violations showed that there were special aspects

that would preclude the application of the open and obvious doctrine. Even if the trial court had determined that plaintiffs' allegations of a violation of the ADA were properly before it, its conclusion regarding special aspects would not have been altered.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola